No. 24-1717

_____

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

BASHIEK STOVALL,
Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:21-CR-00136
The Honorable Judge Joan Humphrey Lefkow

_____

**BRIEF IN SUPPORT OF MOTION TO WITHDRAW AS DEFENDANT'S
APPOINTED APPELLATE COUNSEL PURSUANT TO *ANDERS V.
CALIFORNIA*, 386 U.S. 738 (1967), AND SHORT APPENDIX**

_____

FEDERAL PUBLIC DEFENDER
CENTRAL DISTRICT OF ILLINOIS
401 Main Street, Suite 1500
Peoria, Illinois 61602
Telephone:  (309) 671-7891
Fax:            (309) 671-7898
Email:  Johanna_Christiansen@fd.org

THOMAS W. PATTON
Federal Public Defender

JOHANNA M. CHRISTIANSEN
Assistant Federal Public Defender


Attorneys for Defendant-Appellant,
BASHIEK STOVALL

_____

_____

**CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __24-1717__

Short Caption: __United States v. Stovall__

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervener or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IS ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Bashiek Stovall

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Johanna M. Christiansen; Thomas W. Patton; Amir I. Mohabbat; and Daniel P. McLaughlin

(3)    If the party, amicus or intervener is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervener's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: _s/ Johanna M. Christiansen_    Date:  __December 16, 2024__

Attorney's Printed Name:  __Johanna M. Christiansen__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☒    **No** ☐

Address:  __401 Main Street, Suite 1500__

    __Peoria, Illinois 61602__

Phone Number: _(309) 671-7891_    Fax Number:  __(309) 671-7898__

E-Mail Address: __Johanna_Christiansen@fd.org__

ii

## TABLE OF CONTENTS

**PAGE**

CIRCUIT RULE 26.1 DISCLOSURE STATEMENT ......................................................ii

TABLE OF AUTHORITIES ...........................................................................................v

      CASES ................................................................................................................v

      STATUTES ........................................................................................................ vii

      OTHER AUTHORITIES .................................................................................. vii

PREFACE ........................................................................................................................1

JURISDICTIONAL STATEMENT ................................................................................2

ISSUES PRESENTED FOR REVIEW ...........................................................................3

      I.      Whether any argument challenging the district court's
             handling of pretrial motions would be frivolous? ..........................3

      II.     Whether any argument challenging Mr. Stovall's convictions
             would be frivolous, where the government presented
             sufficient evidence to the jury and the trial was free of
             evidentiary and other errors? ...............................................................3

      III.   Whether any argument challenging Mr. Stovall's sentence
             would be frivolous where his sentence was not imposed in
             violation of the law, was not the result of an incorrect
             application of the guidelines, and was not unreasonable? ............3

STATEMENT OF THE CASE ..........................................................................................4

      I.      Factual Background and Indictment ..................................................4

      II.     Pretrial Motions and Pretrial Conference ..........................................6

             A.     Impeachment of Dr. Sharon Cooper ....................................10

             B.     Testimony and Evidence Presented at Trial .......................11

                    1.     Testimony regarding Lamariyae ................................13

2. Testimony of Dr. Sharon Cooper ...............................15

3. Testimony Regarding Shawnea Mathews-Stovall ...16

4. Testimony Regarding Janiyah ....................................17

5. Testimony Regarding Diamond ................................18

6. Testimony Regarding Angel ......................................19

C. Jury Instructions .......................................................................20

D. Motions for Judgment of Acquittal and New Trial ...........20

E. Forfeiture .................................................................................22

VI. Presentence Investigation Report and Sentencing Memoranda ..22

V. Sentencing Hearing and Judgment in a Criminal Case ...............25

SUMMARY OF ARGUMENT ...................................................................30

ARGUMENT .............................................................................................32

I. Any argument challenging the district court's handling of pretrial  motions would be frivolous ...............................................32

A. Standard of Review ................................................................32

B. Pretrial Motions to Dismiss and Motions in Limine ..........32

1. Motion to Dismiss.............................................................32

2. Defense Motions in Limine ...........................................34

3. Government Motions in Limine .................................35

II. Any argument challenging Mr. Stovall's convictions would be frivolous, where the government presented sufficient evidence to the  jury and the trial was free of evidentiary and other errors.........................................................................................36

A. Standard of Review .................................................................36

B. The government presented sufficient evidence of guilt on all counts...........................................................................37

1. Count 1 – Conspiracy to Commit Sex Trafficking ...38

2.  Counts 2 and 3 – Sex Trafficking of Lamariyae and Janiyah ....................................................... 39

3.  Count 4 – Transportation of Child Pornography..... 40

C.  Challenge to Jury Instructions ................................. 41

D.  Challenge to the Victims not Testifying ................................. 42

E.  Limitation of Cross-Examination of Dr. Sharon Cooper ... 44

F.  The district court did not commit other reversible error at trial ............................................................... 45

G.  Ineffective Assistance of Counsel .......................... 45

III.  Any argument challenging Mr. Stovall's sentence would be frivolous where his sentence was not imposed in violation of the law, was not the result of an incorrect application of the guidelines, and was not unreasonable ............................................... 46

A.  Standard of Review ................................................. 46

B.  Legal Argument ....................................................... 47

1.  Mr. Stovall's guidelines range was correctly calculated     under the sentencing guidelines ......... 48

a.  Base Offense Level – Groups 1 and 2 ............. 48

b.  Undue Influence – Groups 1 and 2 ................. 48

c.  Use of Computer – Groups 1, 2, and 3 ........... 49

d.  Commission of a Sex Act – Groups 1 and 2 ... 49

e.  Vulnerable Victim – Groups 1 and 2 ............. 50

f.  Role in the Offense – Groups 1 and 2 ............. 51

g.  Base Offense Level – Group 3 ......................... 52

h.  Distribution of Child Pornography – Group 3 ................................................................. 52

i.  Pattern of Activity – Group 3 .......................... 52

iii

       k.      Number of Images – Group 3 ..........................53

           l.     Criminal History Calculation ...............53

          2.     Mr. Stovall's sentence is reasonable ....54

          3.     The district court did not err in handling forfeiture and     restitution in this case.................................................55

          4.     The district court did not err by imposing the term or conditions of supervised release .................................57

CONCLUSION........................................................................59

CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B) ................ 60

## TABLE OF AUTHORITIES

**PAGE**

### CASES

*Anders v. California*, 386 U.S. 738 (1967) ................................................................. 1, 48

*Crawford v. Washington,* 541 U.S. 36 (2004) ........................................................ 43, 44

*Lambert v. California*, 355 U.S. 225 (1957) ..................................................................7

*Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972) ...............................................33

*Rita v. United States*, 551 U.S. 338 (2007). .............................................................46

*United States v. Anglin,* 846 F.3d 954 (7th Cir. 2017) ..................................................58

*United States v. Barron,* 52 M.J. 1 (C.A.A.F. 1999) ....................................................44

*United States v. Benabe,* 654 F.3d 753 (7th Cir. 2011) .................................................36

*United States v. Biancofiori,* 2024 U.S. App. LEXIS 4668 (7th Cir. Feb. 28, 2024)..... 43

*United States v. Bickart,* 825 F.3d 832 (7th Cir. 2016)..................................................57

*United States v. Booker*, 543 U.S. 220 (2005) ............................................................46

*United States v. Castro-Aguirre,* 983 F.3d 927 (7th Cir. 2020) ......................................32

*United States v. Chapman,* 692 F.3d 822 (7th Cir. 2012)................................................36

*United States v. Cobblah*, 118 F.3d 549 (7th Cir. 1997) ................................................46

*United States v. Cook,* 970 F.3d 866 (7th Cir. 2020) .............................................33, 34

*United States v. Durham,* 645 F.3d 883 (7th Cir. 2011)..................................................37

*United States v. Fisher,* 943 F.3d 809 (7th Cir. 2019) ...................................................56

*United States v. Freed,* 921 F.3d 716 (7th Cir. 2019) ..................................................42

*United States v. Graham,* 47 F.4th 561 (7th Cir. 2022) ..................................................43

*United States v. Guzman-Cordoba,* 988 F.3d 391 (7th Cir. 2021)....................................56

*United States v. Hernandez*, 84 F.3d 931 (7th Cir. 1996)..............................................45

*United States v. Hise,* 65 F.4th 905 (7th Cir. 2023) ....................................................46

*United States v. Hollins*, 498 F.3d 622 (7th Cir. 2007) ................................................. 46

*United States v. James*, 464 F.3d 699 (7th Cir. 2006) .................................................. 21

*United States v. Kitchen*, 57 F.3d 516 (7th Cir. 1995) ................................................. 22

*United States v. Koech*, 992 F.3d 686 (8th Cir. 2021) ...................................... 7, 32, 34

*United States v. Lewisby*, 843 F.3d 653 (7th Cir. 2016) .............................................. 43

*United States v. Lyons*, 733 F.3d 777 (7th Cir. 2013) ................................................. 47

*United States v. Maez*, 960 F.3d 949 (7th Cir. 2020) .................................................. 36

*United States v. Modjewski*, 783 F.3d 645 (7th Cir. 2015) .......................................... 55

*United States v. Olano*, 507 U.S. 725 (1993) ............................................................. 37

*United States v. Perry*, 223 F.3d 431 (7th Cir. 2000) ............................................ 37, 47

*United States v. Protho*, 41 F.4th 812 (7th Cir. 2022) ................................................ 43

*United States v. Pust*, 798 F.3d 597 (7th Cir. 2015) ................................................... 38

*United States v. Rice*, 520 F.3d 811 (7th Cir. 2008) ................................................... 47

*United States v. Saunders*, 166 F.3d 907 (7th Cir. 1999) ........................................... 44

*United States v. Seifer*, 800 F.3d 328 (7th Cir. 2015) ................................................. 37

*United States v. Skaggs*, 78 F.4th 990 (7th Cir. 2023) ............................................... 56

*United States v. Skoczen*, 405 F.3d 539 (7th Cir. 2005) ............................................. 42

*United States v. Staples*, 202 F.3d 992 (7th Cir. 2000) ............................................... 47

*United States v. Unpradit*, 35 F.4th 615 (8th Cir. 2022) ............................................ 56

*United States v. Velazquez*, 772 F.3d 788 (7th Cir. 2014) .......................................... 54

*United States v. Warren*, 593 F.3d 540 (7th Cir. 2010) ............................................... 37

*United States v. Whyte*, 928 F.3d 1317 (11th Cir. 2019) ......................................... 7, 32

*United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994) ........................................ 7

vi

# STATUTES

18 U.S.C. § 2 ................................................................................................ 42

18 U.S.C. § 1591 ..................................................................... 7, 38, 48, 55

18 U.S.C. § 1591(a) ....................................................................................... 7

18 U.S.C. § 1591(a)(1) ................................................................. 2, 5, 33, 39

18 U.S.C. § 1591(b)(2) ......................................................................... *passim*

18 U.S.C. § 1591(c) ............................................................................. *passim*

18 U.S.C. § 1593 ......................................................................................... 57

18 U.S.C. § 1593(b)(3) ............................................................................... 57

18 U.S.C. § 1594(c) ........................................................................... 2, 5, 38

18 U.S.C. § 1594(d) ................................................................................... 55

18 U.S.C. § 1594(d)(1) ................................................................................. 6

18 U.S.C. § 1594(d)(2) ................................................................................. 6

18 U.S.C. § 1594(e)(1) ............................................................................... 55

18 U.S.C. § 2246(2) ................................................................................... 50

18 U.S.C. § 2252A(a)(1) ....................................................................... 2, 40

18 U.S.C. § 3231 ........................................................................................... 2

18 U.S.C. § 3553(a) ................................................................................... 46

18 U.S.C. § 3742 ................................................................................... 2, 47

28 U.S.C. § 1291 ........................................................................................... 2

# OTHER AUTHORITIES

Fed. R. Crim. P. 29 ................................................................................... 21

Fed.R.Crim.P. 29(a) ................................................................................. 37

Fed.R.Evid. 608(b) ............................................................................. 10, 44

Fed.R.Evid. 801(c)(2) ............................................................................... 35

Fed.R.Evid. 801(d)(2)(A) .................................................... 35

Fed.R.Evid. 801(d)(2)(E) .................................................... 34

Sentencing Reform Act of 1984 ......................................... 47

U.S. Const. Amend, VI ...................................................... 43

U.S.S.G. § 2F1.3(b)(4)(A) ................................................. 49

U.S.S.G. § 2G1.3 ................................................... 48, 49, 50

U.S.S.G. § 2G1.3(a)(2) ...................................................... 23

U.S.S.G. § 2G1.3(b)(2)(B) ........................................... 23, 48

U.S.S.G. § 2G1.3(b)(3)(A) ............................................... 23

U.S.S.G. § 2G1.3(b)(3)(B) ........................................... 23, 49

U.S.S.G. § 2G1.3(b)(4)(A) ........................................... 23, 50

U.S.S.G. § 2G2.2 .............................................................. 52

U.S.S.G. § 2G2.2(a)(2) ................................................. 23, 52

U.S.S.G. § 2G2.2(b)(3)(F) ........................................... 23, 52

U.S.S.G. § 2G2.2(b)(5) ................................................. 23, 52

U.S.S.G. § 2G2.2(b)(6) ................................................. 23, 49

U.S.S.G. § 2G2.2(b)(7) ................................................. 23, 53

U.S.S.G. § 3A1.1 .............................................................. 50

U.S.S.G. § 3A1.1(b)(1) ................................................. 23, 50

U.S.S.G. § 3B1.1(c) ...................................................... 23, 51

U.S.S.G. § 3B1.2 .............................................................. 51

U.S.S.G. § 3D1.4 .............................................................. 24

U.S.S.G. § 4A1.1(a) ...................................................... 24, 54

U.S.S.G. § 4A1.1(e) ...................................................... 24, 54

U.S.S.G. § 4A1.2(k)(1) ................................................. 24, 54

## PREFACE

After carefully examining the record on appeal and researching the relevant law, counsel has concluded that this appeal presents no legally non-frivolous question.  In reaching this conclusion, counsel has thoroughly scrutinized the record for any arguable violation of the United States Constitution, the applicable federal statutes, the Federal Rules of Criminal Procedure, or the United States Sentencing Guidelines.  Because counsel has concluded that no non-frivolous issue is presented by this appeal, he requests leave to withdraw as counsel and submits this brief in accordance with *Anders v. California*, 386 U.S. 738 (1967).

## JURISDICTIONAL STATEMENT

1.       The jurisdiction of the United States District Court for the Northern District of Illinois was founded upon 18 U.S.C. § 3231.  A grand jury sitting in the aforementioned district charged Bashiek Stovall by superseding indictment with one count of conspiracy to commit sex trafficking of a minor in violation of 18 U.S.C. § 1594(c); two counts of sex trafficking a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and (c); and one count of transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1).

2.       The jurisdiction of the United States Court of Appeals for the Seventh Circuit is founded upon 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and is based upon the following particulars:

i.       Date of entry sought to be reviewed:  Sentence imposed on April 24, 2024; Judgment in a Criminal Case entered on April 26, 2024.

ii.       Filing date of motion for a new trial: November 2, 2023;

iii.       Disposition of motion and date of entry: Denied on November 29, 2023;

iv.       Filing date of notice of appeal:  April 29, 2024.

## ISSUES PRESENTED FOR REVIEW

I.      Whether any argument challenging the district court's handling of pretrial motions would be frivolous?

II.     Whether any argument challenging Mr. Stovall's convictions would be frivolous, where the government presented sufficient evidence to the jury and the trial was free of evidentiary and other errors?

III.    Whether any argument challenging Mr. Stovall's sentence would be frivolous where his sentence was not imposed in violation of the law, was not the result of an incorrect application of the guidelines, and was not unreasonable?

## STATEMENT OF THE CASE[1]

### I.     Factual Background and Indictment.

Defendant-Appellant Bashiek Stovall and his daughter, Shawnea Mathews-Stovall, were involved in running a sex trafficking business in Chicago. (R. 109, p. 46-47.)  The government's investigation revealed that Mr. Stovall trafficked multiple minors including Janiyah, Lamariyae, Diamond, Janise, Charity, and Angel.[2]  (R. 109, p. 46.)  The minors took sexually explicit photographs of themselves and sent them to Mr. Stovall over Facebook Messenger.  (R. 109, p. 46.)  Mr. Stovall and Shawnea posted the pictures on websites like megapersonals.com and advertised various escort and sexual services.  (R. 109, p. 8.)

Mr. Stovall began trafficking Lamariyae in the summer of 2018, when she was 14 years old.  (R. 109, p. 9.)  In May of 2020, Mr. Stovall met Janise through Lamariyae and began trafficking her at the age of 16 as well.  (R. 109, p. 15.)  He began trafficking Janiyah in 2020 when she was 16 years old.  (R. 109, p. 9.)  He

---

[1] The following abbreviations are used herein: Record on appeal: "R. __;" Appendix: "App. __;" Trial Transcript: "T. Tr. __;" Government's Exhibits at Trial: "Gov't Ex. ___;" and other hearing transcripts: "[date] Tr. __."

[2] All of the individuals involved in this case use multiple nicknames or usernames different than their own.  For simplicity, this brief refers to their given names, as they were used at trial. The government prepared a chart of the usernames associated with Lamariyae, Shawnea, Janiyah, and Diamond at trial.  (Gov't Ex. 348.)

trafficked Diamond in 2020 when she was 16 years old.  (R. 109, p. 15.)  Mr. Stovall met Charity through Diamond and began trafficking her when she was 16 years old.  (R. 109, p. 16.)  He took sexually explicit photographs of Angel in December of 2020, when she was 12 years old, and discussed trafficking her with Shawnea.  (R. 109, p. 10.)  He sent Shawnea photographs of Angel naked and displaying her genitals.  (R. 109, p. 10.)

Generally, Mr. Stovall posted the advertisements online and customers contacted him.  (R. 109, p. 9, 10, 15.)  Mr. Stovall would tell each minor he had set up a date with a customer, pick her up and take her to the agreed-upon location for the date, provide condoms, and wait in the car while the minors performed dates.  (R. 109, p. 9, 10, 15.)  Mr. Stovall communicated with the customers as to the price and location, often charging $120 for a "quick visit," $160 for half an hour, and $250 for an hour.  (R. 109, p. 9, 10.)  The minors collected money from the customers or the customers sent it to Mr. Stovall's CashApp.  (R. 109, p. 9, 15.)

On February 28, 2022, the grand jury issued a superseding indictment charging Mr. Stovall with one count of conspiring with Individual A[3] to commit sex trafficking of minors in violation of 18 U.S.C. § 1594(c) (Count 1); two counts of sex trafficking of a minor in violation of 18 U.S.C. §§ 1591(a)(1), (b)(2), and (c)

---

[3] Individual A was later identified as Mr. Stovall's daughter, Shawnea.  (R. 64, p. 1.)

(Counts 2 and 3); and transportation of child pornography in violation of 18
U.S.C. § 2252A(a)(1) (Count 4.  (R. 32.)  Count 2 charged the trafficking of
Lamariyae and Count 3 charged the trafficking of Janiyah.  (R. 32.) The
superseding indictment also included a forfeiture allegation pursuant to 18
U.S.C. §§ 1594(d)(1) and (2) which included a personal money judgment of
$225,600.  (R. 32.)

## II.     Pretrial Motions and Pretrial Conference.

Defense counsel filed a motion to dismiss Counts 1, 2, and 3 of the
superseding indictment under the Due Process Clause of the Fifth Amendment
on June 30, 2023.  (R. 58.)  He argued that § 1591(c) is facially and as-applied
unconstitutionally vague because it contains no standard to determine what
constitutes a "reasonable opportunity to observe" age and observing a person is
not a meaningful way to assess age.  (R. 58.)  The government responded that §
1591(c) is not unconstitutionally vague because it provides fair notice of the
conduct it covers and applies to a person of ordinary intelligence.  (R. 67.)

The district court denied the motion to dismiss, first noting that defense
counsel had not framed his argument appropriately as an "as applied" challenge
and primarily disputed the "person of ordinary intelligence" framework.  (App.
1-2.)  The court concluded:

> Here, Stovall makes no real effort to advance arguments
> within this framework.  He provides no analysis connecting his

abstract concerns about § 1591(c) to the particular facts of this case, nor does he explain why the court should deviate from the general practice and entertain a facial challenge to the statute. He spends much of his brief complaining about the Eighth Circuit's use of the phrase "person of ordinary intelligence" when describing the void-for- vagueness doctrine's ordinary person standard (dkt. 58 at 2 (quoting *United States v. Koech*, 992 F.3d 686, 688 (8th Cir. 2021)), but he appears to wrongly believe that the ordinary person test is part of the substantive criminal law rather than a tool of judicial review. In any event, Stovall presents no argument why the court should disregard controlling precedent by using a different standard to assess vagueness. And although Stovall recognizes that both the Eighth Circuit and the Eleventh Circuit have held that § 1591(c) is not void for vagueness (*see id.*), he makes no effort to show why those decisions are distinguishable from this case or explain why this court should adopt different reasoning in the absence of a Seventh Circuit ruling on this issue. *See Koech*, 992 F.3d at 688; *United States v. Whyte*, 928 F.3d 1317, 1331 (11th Cir. 2019).

To the extent Stovall makes a cognizable argument that § 1591(c) is void-for-vagueness, he contends that "merely observing someone is not a meaningful way in which to assess their age" (dkt. 58 at 1) and the lack of tolerance "for a good faith error when effort is expended to ascertain age … [unconstitutionally] creates a strict liability standard in a criminal context" (*id.* at 3). But § 1591 does not create a strict liability offense – although the statute alters the mens rea requirement as to the victim's age, it still includes "the traditional scienter requirement . . . that the offender must know or recklessly disregard the fact that the victim 'will be caused to engage in a commercial sex act.'" *Koech*, 992 F.3d at 688 (quoting 18 U.S.C. § 1591(a)). Furthermore, Supreme Court case law has long recognized that Congress may alter mens rea requirements in such a manner, particularly when defining sex offenses against minors. *See United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 n.2 (1994); *Lambert v. California*, 355 U.S. 225, 228 (1957). Stovall may disagree with the federal policy enacted in § 1591(c), but he cites no precedent and makes no argument contrary to this well-established authority. As Stovall has therefore failed to identify any constitutional infirmity in § 1591(c), much less sustain his burden in advancing a void-for-vagueness challenge, his motion to dismiss Counts I, II, and III of the indictment is denied.

(App. 2.)

Defense counsel also filed multiple motions in limine seeking to bar admission of hearsay by third parties, evidence of Mr. Stovall's prior convictions, evidence of Mr. Stovall's prior arrests, evidence that he was a member of a gang, and use of the terms "victim" and "minor." (R. 59.) He also asked the district court to exclude any evidence of sex trafficking individuals not specifically mentioned in the indictment. (R. 59.) The government argued it should be able to impeach Mr. Stovall with his prior convictions if he testified at trial. (R. 64, 66.) The government agreed only to admit evidence that was properly admissible under a hearsay exception. (R. 66.) Otherwise, the government agreed it would not introduce evidence of prior arrests, gang evidence, drugs, or guns. (R. 66.) However, the government said it would use the words "victim" and "minor." (R. 66.) It also argued evidence of other minors involved in sex trafficking was appropriate because Mr. Stovall was charged with conspiracy. (R. 66.)

The government also filed multiple motions in limine seeking to exclude evidence of the victims' sexual history, argument regarding jury nullification, mention of the penalties faced upon conviction, and argument about missing witnesses. (R. 64.) Mr. Stovall objected to the motion to bar evidence of the victims' sexual history. (R. 65.)

8

At the final pretrial conference, the district court addressed all of the motions in limine.  (App. 3.)  The court granted the motion regarding third party hearsay and ruled that it would not be admitted unless it came in under an exception to the hearsay rule. (App. 4.)  The court also granted the motions regarding introduction of Mr. Stovall's prior arrests and evidence of gang membership.  (App. 4.)  The court allowed the government to use the terms "victim" and "minor" because those terms are commonly used and neutral. (App. 5.)  Finally, the court allowed the government introduce evidence of victims not named in the indictment because the government had charged conspiracy in Count 1, which applied to minors other than those named.  (App. 10.)

Regarding the government's motions in limine, the court determined most of the motions were unopposed so they were granted.  (App. 12.)  The court indicated it would take the motions regarding the victims' sexual history and Mr. Stovall's prior convictions under advisement and issue an order if the issue arose at trial.  (App. 14-15.)  Those issues did not arise at trial.

## III.   Jury Trial.

Jury trial began in this case on August 14, 2023, and concluded on August 17, 2023, with guilty verdicts on all counts.  (R. 76, 79.)

## A.    Impeachment of Dr. Sharon Cooper.

Prior to testimony beginning, the government raised a potential issue regarding their opinion witness, Dr. Sharon Cooper.  (T. Tr. 150.)  The government informed the court that defense counsel wanted to cross-examine Dr. Cooper regarding a finding she was biased during her testimony in a 1995 case in military court where she provided opinion testimony after meeting with the victim.  (T. Tr. 150-51.)  The government argued the potential cross-examination would not fit within Federal Rule of Evidence 608(b) because it was not related to truthfulness.  (T. Tr. 151.)  Defense counsel indicated he was not sure whether he would raise the issue but it would speak to Dr. Cooper's bias. (T. Tr. 151-152.)  The district court reserved ruling on the issue until it arose during testimony.  (T. Tr. 152.)

During trial, defense counsel requested to cross-examine Dr. Cooper about the case, arguing it was relevant to truthfulness or credibility because the court in the military case had ruled that Dr. Cooper was biased.  (T. Tr. 258.)  The government argued that the case was not related to the instant case and it occurred almost 25 years ago. (T. Tr. 259.)  Although the district court initially ruled defense counsel could cross-examine Dr. Cooper about the case, the court changed its decision and held:

> Well, I am going to, I think, exercise my discretion to keep it
> out because I don't think it's very – it doesn't really – I mean, this is

an expert witness.  If you had an expert to counter her testimony, that would be one thing; but this is just attacking her for something that happened more than 15 years ago, which would be criminal – you know, a criminal conviction could be admitted into evidence. So, I will sustain the objection.

(App. 23.)

## B.    Testimony and Evidence Presented at Trial.

The government did not call any of the minors to testify during trial but relied on the testimony of law enforcement and evidence of electronic communications and postings between Mr. Stovall, the minors, the customers, and Shawnae.  The first witness to testify was FBI Agent Holly Groff who arrested Mr. Stovall on February 25, 2021.  (T. Tr. 172-73.)  During the search of Mr. Stovall's residence, officers found two cell phones associated with Mr. Stovall.  (T. Tr. 177-78.)  These phones were used to discover Facebook messages and postings to "megapersonals.com," a website used for advertising escort and other sexual services.  (T. Tr. 189, 194.)  FBI Agent Matt Zmich searched megapersonals.com for postings made from two of the phone numbers associated with Mr. Stovall, the number ending in -7759 and the number ending in -7326.  (T. Tr. 195-96.)  He also found Facebook messages between Mr. Stovall and minors matching the photos and/or timing of the posts on megapersonals.com.  (Gov't Ex. 302, 303, 325, 326, 327, 335.)

FBI Agent Laurie Boskovich testified that Mr. Stovall was the user of -7759

because the phone was found in his room at the residence was linked to his Facebook account. (T. Tr. 423.) The extraction of this phone also revealed photos of Mr. Stovall, a photo of his identification card, and the photos sent by some of the minors to his Facebook account. (Gov't Ex. 502, 503, 504.) The extraction of this phone also revealed several text message strings with various unknown numbers, likely customers responding to advertisements. (Gov't Ex. 505, 506, 507, 508, 510, 511, 513, 514, 515, 516, 517, 518.) Generally, these messages start with the customer asking if someone is available, how much it would cost, and/or sending pictures. Mr. Stovall responds by sending explicit photos of one of the victims and quoting a price for a certain amount of time. (*Id.*)

During one string of messages, the customer said, "You the girl in the pics?? How much you want and let's 69 I want my face rode bby." (Gov't Ex. 507.) Mr. Stovall responds, "Yes I am an 120 qv 150 hh 250 hour an ok."[4] (Govt Ex. 507.) The customer agreed to 120 and gave Mr. Stovall his address. (Gov't Ex. 507.) Mr. Stovall asked for a picture of the money and the customer sent a CashApp. (Gov't Ex. 507.) These recovered text messages are from October and November of 2020, and Mr. Stovall sends pictures of Diamond and Janiyah to the unknown individuals.

---

[4] Generally, "qv" meant "quick visit and "hh" meant half hour. (Gov't Ex. 603.)

### 1.    Testimony regarding Lamariyae.

Zmich first testified regarding his investigation into Mr. Stovall's involvement with Lamariyae. (T. Tr. 198.) Lamariyae was born in December of 2003 and in the Spring of 2020, she would have been 16 years old. (T. Tr. 198-99.) Between March 16 and March 18, 2020, Lamariyae sent Mr. Stovall photographs of herself in her underwear and asked if Mr. Stovall was coming to get her. (Gov't Ex. 301.) Lamariyae told Mr. Stovall she was "staying out all night." (Gov't Ex. 301.) On March 25, 2020, messages between Lamariyae and Mr. Stovall indicate he told her to "pop out" and to "call now got a call." (Gov't Ex. 342.) She told him to come get her and asked if he was staying out all night. (Gov't Ex. 342.)

On April 2, 2020, Lamariyae sent Mr. Stovall a series of photographs including one of her genitals, several in her underwear, and one of her breasts. (Gov't Ex. 302.) Mr. Stoval says, "Pop out. Got got shit lined up" and "Tell T let's get this money" and "Yoo. 200." (Gov't Ex. 302.) Lamariyae said, "You was waiting on me. My friend probably wanted to come out and do it to, probably." (Gov't Ex. 302.) Mr. Stovall said, "Got calls. I got a lot of calls now." (Gov't Ex. 302.) Lamariyae asked Mr. Stovall to give her his CashApp username, which he did. (T. Tr. 212-13.)

Lamariyae asks Mr. Stovall to "post her" and Mr. Stovall tells her to fix her

13

hair because she's "got a call."  (Gov't Ex. 302.)  Mr. Stovall's phone number ending in -7326 posted advertisements to megapersonals.com on April 2, 2020, using the photographs of Lamariyae she sent him on Facebook.  (Gov't Ex. 401a, 401b.)  These postings were entitled, "I'm always available . . . let me come see you" and "Sloppy head, tight wet pussy, call only when you are ready."  (Gov't Ex. 401a, 401b.)  Mr. Stovall posted a similar advertisement using Lamariyae's photographs on April 9, 2020.  (Gov't Ex. 401c.)

Similar exchanges occurred between Mr. Stovall and Lamariyae later in April of 2020, during which he tells her they would get a hotel if she was going to stay out all night, discussing getting her money, and setting up multiple calls for her.  (Gov't Ex. 304, 305, 306, 344, 345.)  On April 28, 2020, Mr. Stovall told Lamariyae, "Come get the money ita alot" and "at least a1000 or better Come out."  (Gov't Ex. 305, p. 8.)  Lamariyae responded "damnnn u don't let my pussy heal or nothingggg."  (Gov't Ex. 305, p. 8.)  Mr. Stovall posted megapersonals.com advertisements during this time of Lamariyae with her photographs with the titles "two of us we better then the last one u had out calls only no anal," and "Available for outcalls and car date, Chicago area only." (Gov't Ex. 401d, 401e.)

In May of  2020, Mr. Stovall posted advertisements with Lamariyae's photographs on megapersonals.com  with the titles, "Come crack us open call

14

omly whem raddd d" and "who key can fit our hole."  (Gov't Ex. 401f, 401g.)

Facebook messages between Lamariyae and Mr. Stovall show Mr. Stovall telling

her "Coming for you . . . I got calks fo you" to which she responded, "Okay."

(Gov't Ex. 308.)  He told her "500, then you go home" but she responded "I

probably stay out all night."  (Gov't Ex. 308.)  On June 14, 2020, Mr. Stovall

posted another advertisement titled, "come stick your dick in my ignition and let

me turn you on" with pictures of Lamariyae.  (Gov't Ex 401i.)  Lamariyae sent

additional photographs to Mr. Stovall on Facebook depicting her partially

clothed and Mr. Stovall used these photos in advertisements in July of 2020.

(Gov't Ex. 310, 403a, 403b, 403d.)

## 2. Testimony of Dr. Sharon Cooper.

Dr. Cooper testified she is a developmental and forensic pediatrician who

has an expertise in child sexual exploitation.  (T. Tr. 261.)  Dr. Cooper did not

interview any of the minors in this case or review any materials specifically

related to this case.  (T. Tr. 271.)  In general, Dr. Cooper testified about the

difference between sex trafficking and prostitution and informed the jury that

someone under the age of 18 cannot consent to participate in prostitution.  (T. Tr.

272-73.)  She also explained what sex traffickers look for in victims – vulnerable

individuals who may be runaways, homeless, involved in social services, and

underage.  (T. Tr. 275.)  She testified that sex traffickers often act as father figures

to victims and it is common for one victim to recruit others.  (T. Tr. 281-82.)

### 3.    Testimony Regarding Shawnea Mathews-Stovall.

Shawnea did not testify at trial but Agent Zmich testified about her interactions with Mr. Stovall during this case.  (T. Tr. 290.)  Shawnea was born in March of 2002, which made her 18 years old during most of the relevant time period.  (T. Tr. 291; Gov't Ex. 113.)  On May 17, 2020, Shawnea told Mr. Stovall "I'm finna post up so you can get more calls coming in."  (Gov't Ex. 325.)  When Mr. Stovall asked her about posting two different victims, Shawnea stated that she can make separate advertisements for them.  (Gov't Ex. 326.)  Two days later, Shawnea says she can help Mr. Stovall get money for a place to stay by posting advertisements for him.  (Gov't Ex. 327.)  Mr. Stovall responds that he is "in his car" and Shawnea says, "Least you got that.  I'm trying to see if I can get my driver's license here in Georgia.  Then I can put the car in my name and come up there and make so much more with two cars."  (Gov't Ex. 327.)

On September 5, 2020, Mr. Stovall sent a series of pictures of two different girls to Shawnae.  (Gov't Ex. 332.)  Shawnae said, "Oh yeah" and Mr. Stovall sent a video and responded, "Let me go get her."  (Gov't Ex. 332, p. 10.)  They then had the following conversation:

> Shawnae: If u want to idc
> Mr. Stovall: Ask her we get a room n u help with the baby
> Shawnae: I gotta ask when she get off work
> Mr. Stovall:  She got a job how she gone work.  Let's take them to atl.

Shawnae: Pretty sure once she come out for night she will call want
    a Friday off
Mr. Stovall: Fo sho

(Gov't Ex. 332, p. 10.)

### 4.    Testimony Regarding Janiyah.

FBI Agents Zmich and Boskovich also testified regarding their investigation into the sex trafficking of Janiyah.  (T. Tr. 305, 311.)  Janiyah was born in June of 2004 and she would have been 16 years old during this time period.  (Gov't Ex. 101; T. Tr. 305.)  One of the phone numbers associated with Mr. Stovall posted advertisements with photographs of Janiyah in her underwear on November 1, 2020, with the title "Hot Sexy Petite Ready to have some fun OUTCALLS HOTELS."  (Gov't Ex. 405a.)  In January of 2021, Mr. Stovall messaged her "Money today" and she responded "Yeah."  (Gov't Ex. 319.)

In February of 2021, Mr. Stovall told Janiyah he can get her a hotel room and she can bring a friend.  (Gov't Ex. 320.)   On February 12, 2021, Janiyah sent Mr. Stovall five photographs of herself in her underwear and naked.  (Gov't Ex. 321, p. 7-15.)  On February 14, 2021, Janiyah messaged Mr. Stovall "He Tb a Mf spin a night" to which Mr. Stovall responds, "Noo. 1000."  (Gov't Ex. 321, p. 16.)  She clarified, "No he was tryna make me stay" and Mr. Stovall sent a "thumbs up" symbol.  (Gov't Ex. 321, p. 16-17.)  A short time later, Janiyah messaged, "He

17

doing 30 min. 160" and Mr. Stovall sent another "thumbs up." (Gov't Ex. 321, p.

17.) On February 17, 2021, Mr. Stovall contacted Janiyah about going out and she

sent him additional photographs of her genitals and breasts. (Gov't Ex. 323, p.

11-18.) On February 19, 2021, Janiyah told Mr. Stovall, "You gotta give me 80.

He finna send the whole 160 on cashapp. He sent it." (Gov't Ex. 323, p. 22.)

## 5. Testimony Regarding Diamond.

Zmich's investigation also revealed Mr. Stovall's involvement with

Diamond, who was born in December of 2003. (T. Tr. 332, Gov't Ex. 102.)

During the relevant time period, she would have been 15 to 16 years old. (T. Tr.

332.) In October of 2020, Diamond and Mr. Stoval discussed doing dates and she

sent him two pictures of her genitals. (Gov't Ex. 334.) In November of 2020,

Diamond sent Mr. Stoval additional photographs, including of her breasts and

genitals. (Gov't Ex. 335, p. 2-13; Gov't Ex. 336.) She asked Mr. Stovall if he had

posted her. (Gov't Ex. 335, p. 14.) She mentioned that a customer sent her a

picture and how much he wanted to send. (Gov't Ex. 337, p. 1.) Mr. Stovall

responded that he had a lot of calls set up for her. (Gov't Ex. 337, p. 1.) When he

asked her "What you have for me?" she responded, "$60 rn from that one call.

I'm trying to let it all build up to already 200 before I give it to you." (Gov't Ex.

337.) When he questioned her, Diamond said she had been on one of his calls

and the other one was her regular. (Gov't Ex. 337.) Mr. Stovall told her to bring

18

the money to him.  (Gov't Ex. 337.)

Diamond continued to go on calls for Mr. Stovall in December of 2020 and sent him additional pictures.  (Gov't Ex. 338, 339.)  On December 22, 2020, Mr. Stovall and Diamond were discussing going out on calls and Mr. Stovall instructed Diamond to "call nae nae [Shawnae] my daughter.  We good fa a week."  (Gov't Ex. 339, p. 2.)  Diamond sent additional pictures of herself to Mr. Stovall, including pictures in her underwear.  (Gov't Ex. 339, p. 6-10.)  Mr. Stovall asked her if she was ready to "pop out" on December 25 and 26, 2020.  (Gov't Ex. 339, p. 11.)  On December 25, 2020, Shawnae asked Mr. Stovall for Diamond's Facebook name.  (Gov't Ex. 333.)  He asked her again on December 29, 2020, and said he was in his daughter's car.  (Gov't Ex. 15-16.)

### 6.    Testimony Regarding Angel.

Zmich also testified about the attempted sex trafficking of Angel in December of 2020, when she was 12 years old.  (T. Tr. 347-48; Gov't Ex. 105.)  On December 11, 2020, Mr. Stovall sent Shawnae a series of photographs of Angel, some of which depicted her breasts and genitals.  (Gov't Ex. 314.)  Shawnae responded, "Nah," "She don't got no shape," "daddy no," and "This ones a no." (Gov't Ex. 314.)  Zmich was able to identify the room where the photographs of Angel were taken as being a room at the Amber Inn on the South Side of Chicago.  (Gov't Ex. 117, 118; T. Tr. 356-57.)  Mr. Stovall's name is on the guest

list in Room 224 at the Amber Inn on December 11, 2020.  (T. Tr. 346.)

### C.      Jury Instructions.

During the jury instruction conference, defense counsel objected to Instruction 29, the interstate commerce instruction, and objected to the instruction addressing aiding and abetting because the indictment did not charge aiding and abetting.  (T. Tr. 363-64.)  Defense counsel suggested amended language for the missing witness instruction and the government agreed to the new language.  (T. Tr. 366.)  Defense counsel also objected to Instructions 35 and 36 because they also discuss aiding and abetting.  (T. Tr. 512.)  The district court ultimately removed Instruction 36 but left in Instruction 35 because it addressed the conspiracy.  (T. Tr. 364.)

### D.      Motions for Judgment of Acquittal and New Trial.

Defense counsel noted several times during trial that Lamariyae had visible tattoos on her body in the picture.  (T. Tr. 256, 474-75; Gov't Ex. 401c, 506b.)  Counsel noted the legal age in Illinois to receive a tattoo was 18, although none of the witnesses were familiar with Illinois laws on tattoos.  (T. Tr. 257, 475.)  The government rested on August 17, 2023, and defense counsel made a motion for judgment of acquittal.  (App. 25.)  The district court denied the motion.  (App. 25.)  The defense rested a short time later and made a second motion for judgment of acquittal.  (App. 28.)  The district court denied that motion as well.

(App. 28.)  The jury found Mr. Stovall guilty on all four counts.  (T. Tr. 590.)

On November 2, 2023, defense counsel filed a motion for judgment of acquittal and a motion for new trial.  (R. 89.)  He noted that Illinois requires all individuals to be at least 18 years of age when they receive tattoos under 720 ILCS 5/12C-35.  (R. 89, p. 2.)  He argued that because two of the victims had obvious tattoos in the pictures submitted as evidence at trial, the victims were not minors.  (R. 89, p. 3)  The government filed a response on November 7, 2023, arguing that only two of the victims – Lamariyae and Diamond – had visible tattoos so Mr. Stovall's argument did not affect the remaining counts of the indictment.  (R. 90, p. 4.)  In addition, the government argued that the overwhelming evidence was that the victims were all minors based on their birth certificates.  (R. 90, p. 5.)  The government also pointed out that Illinois law makes it illegal to *give* a tattoo to a minor, not for the minor to receive one.  (R. 90, p. 5.)

The district court denied Mr. Stovall's motion for judgment of acquittal and motion for new trial on November 29, 2023, stating:

> Defendants motion for judgment of acquittal is denied.  A judgment of acquittal is appropriate "only when the evidence is insufficient to sustain the conviction."  *United States v. James*, 464 F.3d 699, 705 (7th Cir. 2006); Fed. R. Crim. P. 29.  Defendant acknowledges that the court must consider all of the evidence in the light most favorable to the government and conclude that no reasonable fact-finder could have found the existence of each element of the crime beyond a reasonable doubt.  *See* dkt 89 at 2,

*quoting United States v. Kitchen*, 57 F.3d 516, 529 (7th Cir. 1995). Defendant argues here, as he did to the jury, that the evidence of tattoos on the body of the victims in Exhibits 401c and 506b, combined with an Illinois law prohibiting tattooing the body of a person under the age of 18, Ill. Comp. Stat. 5/12C−35, points to the necessary conclusion that the victims depicted were at least 18 years of age. That the jury chose to reject this argument in the face of other evidence, including the victims' birth certificates demonstrating that the victims were not yet 18, was not unreasonable.

(App. 36.)

### E.      Forfeiture.

The government filed a motion for preliminary forfeiture on November 22, 2023. (R. 92.) The government asked for a personal money judgment of $225,600 based on the amount of proceeds traceable to the offense. (R. 92.) The government asserted the victims worked five days per week, earning approximately $300 daily. (R. 92, Exhibits A and B.) The district court granted the motion and entered the preliminary order of forfeiture on November 27, 2023. (R. 95, 96.)

## VI.   Presentence Investigation Report and Sentencing Memoranda.

The United States Probation Officer prepared the Presentence Investigation Report ("PSR") on October 25, 2023, and revised it on April 26, 2024. (R. 109, p. 3.) The officer divided the offenses into three groups – Group 1 was the conspiracy charged in Count 1 and the sex trafficking of Lamariyae charged in Count 2; Group 2 was the conspiracy charged in Count 1 and the sex

trafficking of Janiyah charged in Count 3; and Group 3 was the transportation of child pornography charged in Count 4. (R. 109, p. 11-14.) Groups 1 and 2 had the same guidelines calculations. The base offense level was 30 under § 2G1.3(a)(2) because Mr. Stovall was convicted under § 1591(b)(2). (R. 109, p. 11-12.) The officer assessed a two level enhancement under § 2G1.3(b)(2)(B) because Mr. Stovall unduly influenced a minor to engage in sexual conduct; a two level enhancement under § 2G1.3(b)(3)(A) and (B) because the offense involved the use of a computer; a two level enhancement under § 2G1.3(b)(4)(A) because the offenses involved commission of a sex act; a two level enhancement under § 3A1.1(b)(1) because the victims were vulnerable; and a two level enhancement under § 3B1.1(c) based on Mr. Stovall's role in the offense. (R. 109, p. 11-13.) The adjusted offense level for both Group 1 and Group 2 was 40. (R. 109, p. 11-13.)

The officer determined the base offense level for Group 3 was 22 under § 2G2.2(a)(2). (R. 109, p. 13.) The officer assessed a two level enhancement under § 2G2.2(b)(3)(F) because Mr. Stovall engaged in distribution of child pornography; a five level enhancement under § 2G2.2(b)(5) because he transported minors to engage in sexual activity; a two level enhancement because he used a computer during the offense under § 2G2.2(b)(6); and a two level enhancement because the offense involved more than ten images under § 2G2.2(b)(7). (R. 109, p. 13-14.) The adjusted offense level for Group 3 was 33. (R. 109, p. 14.) The multiple

count adjustment guidelines resulted in an additional enhancement of three

levels pursuant to § 3D1.4 and a combined adjusted offense level of 43.[5]  (R. 109,

p. 14.)

The probation officer determined Mr. Stovall had a total of 10 criminal

history points, which resulted in a criminal history category of V.  (R. 109, p. 23.)

He received three criminal history points under §§ 4A1.1(a) and 4A1.2(k)(1) for a

2003 conviction for Armed Robbery with Threat of Force, for which he was

sentenced to 10 years in prison.  (R. 109, p. 21.)  He received three criminal

history points under § 4A1.1(a) for a 2017 conviction for theft, for which he was

sentenced to two years in prison.   (R. 109, p. 22.)  He received three criminal

history points for a 2017 conviction for burglary under § 4A1.1(a) for which he

was sentenced to three years in prison.  (R. 109, p. 22.)  Finally, he received one

criminal history point under § 4A1.1(e) because he received more than seven

criminal history points and committed the instant offense while on probation.

(R. 108.)  Based upon a total offense level of 43 and a criminal history category of

V, the guidelines range was life in prison.  (R. 109, p. 36.)

Mr. Stovall filed objections to the PSR and a sentencing memorandum on

---

[5] The officer also determined Mr. Stovall was a repeat and dangerous sex offender
under § 4B1.5(b)(1) which increased his total offense level to 48.  (R. 109, p. 15.)
However, because the total offense level cannot be more than 43, this enhancement had
no effect on the guidelines calculations.  (R. 109, p. 15.)

April 10, 2024. (R. 103.) He requested a 10 year sentence and a 10 year term of supervised release. (R. 103, p. 1.) He generally objected to the guidelines enhancements for undue influence, use of a computer, commission of a sex act, and vulnerable victim by stating, "These enhancements are inappropriate because they overstate culpability. As alluded to by Government expert trial witness Dr. Cooper, the content of these enhancements are commonly prevalent in offenses such as those charged. In effect, the enhancements would apply so broadly as to effectively increase the Base Offense Level." (R. 103, p. 2.) He also argued that an enhancement for his role in the offense overstated his culpability. (R. 103, p. 3.)

In mitigation, he asserted he had significant health issues, a difficult childhood, and suffered from more onerous incarceration during the pandemic. (R. 103, p. 5-6.) Mr. Stovall did not object to the amount of restitution proposed but stated that he understood the district court "may impose restitution and reminds the court that he has been found indigent which is relevant to restitution." (R. 103, p. 7.) He stated he had no objection to the proposed conditions of supervised release. (R. 103, p. 8.)

## V.    Sentencing Hearing and Judgment in a Criminal Case.

The district court held a sentencing hearing on April 24, 2024. (R. 107.) Defense counsel objected to the enhancement for using a computer. (App. 42.)

25

The district court found the enhancement was appropriate because Mr. Stovall posted photos on a website that was accessible to the public. (App. 42.) Defense counsel then objected to the role in the offense enhancement arguing that there were no other participants in the offense because his daughter was not charged and it overstated his culpability. (App. 42-43.) The district court denied the objection, finding that it did not matter than Shawnae was not charged because the jury found Mr. Stovall guilty of the conspiracy beyond a reasonable doubt. (App. 43.) Defense counsel objected to the enhancement for engaging in a pattern of activity because Mr. Stovall did not have a chance to cross-examine the victims. (App. 44.) The court found the enhancement applied because Mr. Stovall transported multiple minors to engage in sexual activity. (App. 44.) The court also overruled the objection to the vulnerable victim enhancement. (App. 45-46.) The district court adopted the PSR and the guidelines calculations. (App. 46.)

Defense counsel argued in mitigation and asked for a sentence of 10 years in prison, 10 years of supervised release, and no restitution. (App. 47-48.) He asserted that Mr. Stovall had a difficult childhood, was shot seven times in 2018 and still has bullets in his body, and 10 years could be a life sentence based on his poor health. (App. 49-50.) Mr. Stovall spoke on his own behalf and proclaimed his innocence. (App. 57-58.) The district court made the following findings

26

regarding the appropriate sentence:

> THE COURT: Okay. Well, I have to – well, first of all, let me say that my responsibility is to impose a sentence that is sufficient but not greater than necessary to comply with the purposes of sentencing.  And those purposes include promoting respect for the law and reflecting the seriousness of the offense as well as deterring you and deterring others from criminal conduct, protecting the public from further crimes; and, you know, providing you with needed educational, vocational training, medical care, and that sort of thing, which is not really at issue in this case.
>
> But first let's talk about the seriousness of the offense.  I don't think there's really anything that is more revolting to the public than –
>
> THE DEFENDANT:  What that mean?
>
> THE COURT:  Revolting?  That means it's shocking and horrifying.
>
> – than the kind of conduct that you were convicted of doing.  You say you didn't do it, but you were convicted by a jury.  So I have to – I have to accept that you did this – these crimes and that, you know, you didn't show me or show the jury that anyone else did it instead of you or any – put on any defense whatsoever.
>
> So, you know, whatever you say, I have to accept that you are guilty as convicted.
>
> Let me say that I agree with what your attorney said at the beginning.  That every time I come out to sentence someone, I am sad for them.  I am sad for the victims.  And I also acknowledge that you are a human being and that you're not all bad or all good – none of us is – and that you, you know, have had a hard time growing up.  And, I mean, I don't even pretend to relate to your background, because I didn't experience anything like that; but I can acknowledge that you didn't get any breaks, you know.
>
> However, you know, your background is just one crime after another from the age of 14.  So times that you could have turned your life around, you simply didn't.  So I have a hard time, you know, understanding where you're coming from in that regard.
>
> Now, it's true that – I mean, your attorney spoke, I think, very eloquently on your behalf that you're not in good health and that you – you know, you stayed away from gangs as a young man.  And, you know, you're not a young man now.  So those are factors

that work in your favor.

So, you know, this is not an easy situation, and I find it a little hard to – it's hard to be entirely sympathetic with your position, especially when, you know, you aren't even accepting that this conduct was damaging to these young girls.

So anyhow, I have to – I have to pick a number of months that you need to pay for what you have done. And so I have a general feeling that, you know, 30 years is probably too long because, number one, you'll be much older then, and I just don't know what benefit can be gained from that. But I am going to sentence you to 268 months, which is 22 – comes out to 22 years.

(App. 58-60.) The court imposed 286 months on Counts 1, 2, and 3, and a 60 month sentence on Count 4, all running concurrently. (App. 65.) The court also imposed seven year terms on each count, running concurrently, and a special assessment of $400. (App. 66.) Defense counsel said there were no objections to the proposed conditions of supervised release and the court the imposed the proposed conditions. (App. 66-69.)

The court then addressed restitution, asking the government to explain how restitution had been calculated. (App. 62.) The government explained:

Your Honor, for – the calculation is slightly different for each of the six victims.

For all of them, we looked at their statements to FBI and to the victims that testified in the grand jury. We used the information that they provided to determine approximately how many weeks they worked for defendant and approximately how many days per week, and then we multiplied that by an assumed $400 per day to account for the ill-gotten gains that defendant would have received from the work that the girls did on his behalf.

In addition, for Charity, who had a small child at – when she was working for defendant, we also multiplied the number of days that we assumed she worked by $50 to account – $50 per day to

account for child care expenses.

And then for the two victims that the government believes defendant introduced to trafficking and, therefore, the defendant was – is the proximate cause of any mental or medical health consequences that they may suffer in the future, we asked for restitution to cover future and prior mental health treatment where we have that available.

(App. 62-63.)  The court imposed the government's calculated amount of restitution - $225,600.  (App. 63.)  The district court entered the judgment in a criminal case on April 26, 2024, and Mr. Stovall file a timely notice of appeal on April 29, 2024.  (R. 110, 113.)

## SUMMARY OF ARGUMENT

Mr. Stovall cannot raise a challenge on appeal to the district court's handling of pretrial issues. The court correctly denied the motion to dismiss because Mr. Stovall did not make a sufficient argument on the issues. The court also correctly ruled on all motions in limine. In addition, any argument challenging Mr. Stovall's convictions would be frivolous, where the government presented sufficient evidence to the jury and the trial was free of evidentiary and other errors. First, the government presented sufficient evidence of guilt on all of the charged counts. Second, the court correctly denied Mr. Stovall's challenges to the jury instructions. Third, there is no potential argument that Mr. Stovall's right to confrontation was violated because the minor victims did not testify. Fourth, the district court did not abuse its discretion by limiting cross-examination of the government's opinion witness. In short, counsel can discern no error in the trial proceedings, let alone a reversible error warranting a new trial.

Any argument challenging Mr. Stovall's sentence would be frivolous where his sentence was not imposed in violation of the law, was not the result of an incorrect application of the guidelines, and was not unreasonable. Mr. Stovall's sentence of incarceration was not imposed in violation of law as his sentences on each one of the counts did not exceed the statutory maximum for

that count.  There is no non-frivolous issue regarding the sentencing guidelines calculations in this case.  There is no challenge to the substantive reasonableness of the sentence and no possible challenge to the term or conditions of supervised release.  Finally, the district court correctly entered the restitution order.

## ARGUMENT

### I.   Any argument challenging the district court's handling of pretrial motions would be frivolous.

#### A.   Standard of Review.

To the extent the district court made legal determinations on the admissibility of evidence, review is *de novo*. *United States v. Castro-Aguirre,* 983 F.3d 927, 934 (7th Cir. 2020). Otherwise, this Court reviews decisions to admit or exclude evidence for an abuse of discretion. *Id.*

#### B.   Pretrial Motions to Dismiss and Motions in Limine.

##### 1.   Motion to Dismiss.

Mr. Stovall filed a motion to dismiss indictment under the Due Process Clause of the Fifth Amendment, arguing § 1591(c) is unconstitutionally vague on its face and as-applied because there is no standard as to what constitutes "reasonable opportunity to observe" and because merely observing someone is not a meaningful way to assess age. (R. 58.) The district court denied the motion, finding that defense counsel had failed to make an argument in the framework required. (App. 2.) Specifically, the court held that Mr. Stovall had failed to distinguish the out-of-circuit cases on the issue including *United States v. Koech,* 992 F.3d 686, 688 (8th Cir. 2021) and *United States v. Whyte,* 928 F.3d 1317. 1331 (11th Cir. 2019).

To evaluate a vagueness claim, this Court considers whether the statute defines the offense with sufficient clarity that an ordinary person has fair notice of what conduct is prohibited and so as to avoid arbitrary and discriminatory enforcement. *United States v. Cook*, 970 F.3d 866, 872-73 (7th Cir. 2020). "What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Id.* The Supreme Court has held that, to avoid a vagueness challenge, a statute must afford "a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972).

Section 1591(a)(1) defines the following offense: "Whoever knowingly . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . . knowing, or . . . in reckless disregard of the fact . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished . . . ." 18 U.S.C. § 1591(a)(1). However, subsection (c) provides an exception to the knowledge of the victim's age requirement: "In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the [victim], the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years." 18

33

U.S.C. § 1591(c).

Mr. Stovall did not argue how a "reasonable opportunity to observe: was unconstitutionally vague. Instead, he argued the standard "a person of ordinary intelligence" was vague. However, the standard of a "person of ordinary intelligence" is not in the statute. A facial challenge can succeed when the challenged *statute* lacks "any ascertainable standard for inclusion and exclusion." *Cook,* 940 F.3d at 873. Mr. Stovall cannot show on this record it is impossible to determine what the fact of the victims' ages were based on the language of the statute. The phrase "reasonable opportunity to observe" provides a person of ordinary intelligence notice of what is prohibited and has a common meaning. *Koech,* 992 F.3d at 688. It has an ascertainable standard and is not vague on its face. Therefore, the district court did not err by denying the motion to dismiss.

## 2.    Defense Motions in Limine.

Mr. Stovall filed several motions in limine prior to trial. (R. 59.) The government did not object to the majority of those motions or the district court granted them. First, the court granted the motion barring third party hearsay unless an exception applied. (App. 4.) Although the government did present testimony that could be qualified as hearsay, the testimony came in under recognizable exceptions. For example, Shawnae's statements came in under the co-conspirator exception in Federal Rule of Evidence 801(d)(2)(E); Mr. Stovall's

statements were non-hearsay statements of a party-opponent under Rule 801(d)(2)(A); and the victims' statements were offered to provide context for Mr. Stovall's statements, not for their truth, pursuant to Rule 801(c)(2).

Second, Mr. Stovall's motion in limine seeking to bar admission of his prior convictions is moot because he did not testify and none of his convictions were admitted. Third, the motion to prevent the government from using the terms "victim" and "minor" was not supported by case law. The terms are in common usage and not necessary prejudicial. "Minor" is used throughout the jury instructions, including those derived from pattern instructions. (R. 80.) "Victim" is also in common usage in criminal cases. Finally, Mr. Stovall's motion to keep out evidence of any trafficking of minors other than Lamariyae and Janiyah was properly denied because he was charged with conspiracy. Therefore, the district court did not err in its ruling on Mr. Stovall's motions in limine.

### 3. Government Motions in Limine.

The government also filed multiple motions in limine. (R. 64.) The only motion Mr. Stovall objected to was the motion to bar evidence of the victims' sexual history. (R. 65.) His reasoning was that he should be able to confront his accusers and question them as to whether some other trafficker victimized them. (R. 65.) The district court granted the motion but held that "the court reserves

decision for trial as to whether defendant can cross-examine victim witnesses about the possibility of misidentification in light of other traffickers who may have victimized them." (R. 74, p. 2.) The court noted that defense counsel would not be able to question the victims' sexual behavior or predisposition under Rule 412, but also noted counsel did not seem to intend to pursue this line of questioning. (R. 74, p. 6.) In the end, the minor victims did not testify, the issue was moot. There were no issues regarding pretrial proceedings in this case.

## II. Any argument challenging Mr. Stovall's convictions would be frivolous, where the government presented sufficient evidence to the jury and the trial was free of evidentiary and other errors.

### A. Standard of Review.

This Court reviews the district court's decision to deny a motion for new trial for an abuse of discretion. *United States v. Benabe,* 654 F.3d 753, 780 (7th Cir. 2011). This Court reviews the sufficiency of evidence under a deferential standard and will reverse the defendant's conviction "only if no rational trier of fact, viewing the evidence in the light most favorable to the government, could have found his guilty beyond a reasonable doubt." *United States v. Chapman,* 692 F.3d 822, 825 (7th Cir. 2012). In reviewing a district court's denial of a motion for judgment of acquittal, an appellate court does not defer to the district judge's decision and reviews *de novo. See United States v. Maez,* 960 F.3d 949, 966 (7th Cir. 2020).

Unpreserved challenges (unless waived), are reviewed for plain error. *See United States v. Perry,* 223 F.3d 431, 433 (7th Cir. 2000). To demonstrate plain error, a defendant must show that (1) the court committed error; (2) it was plain; (3) it affected the defendant's "substantial rights"; and (4) the court "should exercise its discretion to correct the error because it seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Durham,* 645 F.3d 883, 890 (7th Cir. 2011) (citing *United States v. Olano,* 507 U.S. 725, 732–35 (1993)); *see also United States v. Seifer*, 800 F.3d 328, 330 (7th Cir. 2015) (under plain error, "it's the defendant's burden to establish prejudice").

## B.   The government presented sufficient evidence of guilt on all counts.

Federal Rule of Criminal Procedure 29(a) provides that, "[a]fter the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). "In challenging the sufficiency of the evidence, [a defendant] bears a heavy, indeed, nearly insurmountable, burden." *United States v. Warren,* 593 F.3d 540, 546 (7th Cir. 2010). Defense counsel made several motions for judgment of acquittal – at the close of the government's case, at the close of the evidence, and after the jury's verdict. (App. 25, 28, 33.) He also filed a motion for new trial. (R. 89.) The district court denied all of the motions. (App. 36.)

### 1.     Count 1 – Conspiracy to Commit Sex Trafficking.

Mr. Stovall was charged with conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c) based on a conspiracy with his daughter, Shawnae. (R. 32.) This statute applies to "[w]hoever conspires with another to violate section 1591. 18 U.S.C. § 1594(c). To prove the existence of a conspiracy, the government must show that the conspiracy existed and the defendant knowingly became a member of the conspiracy with an intent to advance the conspiracy. (R. 62, p. 22.) Circumstantial evidence may be used to establish the existence of a conspiracy and a defendant's involvement in the conspiracy. *United States v. Pust,* 798 F.3d 597, 603 (7th Cir. 2015). This Court has noted that circumstantial evidence is often the only proof available when no members of the conspiracy testify against their co-conspirators. *Id.*

There is sufficient evidence in the record to show Mr. Stovall and Shawnae conspired to traffic multiple minors. Although the bulk of the evidence was that Mr. Stovall was directing the trafficking of the victims, he and Shawnae worked together to further the conspiracy in various ways. Shawnae posted advertisements for sexual services on megapersonals.com and discussed these posts with Mr. Stovall. (Gov't Ex. 326.) After Shawnae posted the advertisement, she informed Mr. Stovall she put his number on the ad and told him to let her know when the victim got a call. (Gov't Ex. 326.) Shawnae

38

frequently discussed making more money for Mr. Stovall, joining him in Chicago to work together, and getting another car so they could transport the victims on more dates. (Gov't Ex. 327.) They discussed customers and money, and Mr. Stovall sent Shawnae to pick up a minor and take her to a date. (Gov't Ex. 331.) They exchanged photographs and information about Diamond over Facebook to post her as well. (Gov't Ex. 332, 333, 339.) Mr. Stovall also sent sexually explicit photographs of Angel, who was 12 years old at the time, to Shawnae. (Gov't Ex. 314.) Shawnae rejected Angel, stating "She don't got no shape. Daddy no. This one's a no." (Gov't Ex. 314.) This evidence was sufficient to show that Mr. Stovall and Shawnae participated in a conspiracy and Mr. Stovall knowingly joined it and intended to advance it.

### 2.    Counts 2 and 3 – Sex Trafficking of Lamariyae and Janiyah.

In Counts 2 and 3, Mr. Stovall was charged with sex trafficking of a minor in violation of 18 U.S.C. § 1591(a)(1), (b)(2), and (c). (R. 32.) Count 2 involved the sex trafficking of Lamariyae from June of 2018 to December of 2020. (R. 32, p. 2.) Count 3 involved the sex trafficking of Janiyah from June of 2020 to February of 2021. (R. 32, p. 3.) The government is required to prove the following elements to convict a defendant of sex trafficking: (1) the defendant knowingly recruited, enticed, harbored, transported, provided obtained maintained, patronized, or solicited by any means the victim; (2) the defendant knew or recklessly

disregarded the fact that the victim was under 18 years old and would be caused to engage in a commercial sex act or had a reasonable opportunity to observe the victim and knew or recklessly disregarded the fact that the victim would be caused to engage in a commercial sex act; and (3) the offense was in or affecting interstate commerce. (R. 62, p. 26-29.)

Both Lamariyae and Janiyah sent sexually explicit photographs to Mr. Stovall over Facebook. Mr. Stovall or Shawnae then posted those photographs along with sexually suggestive advertisements on megapersonals.com. He then discussed prices and locations with potential customers and told the victims to get ready, often getting angry and calling repeatedly if they were not ready on time. (Gov't Ex. 301. 302.) He transported them to dates. The government proved both Lamariyae and Janiyah were under the age of 18 when the trafficking took place. The government also proved that Mr. Stovall had a reasonable opportunity to observe them through video chats, driving them to dates, and the many photographs they took and sent to him. Finally, the government proved the offense involved interstate commerce through use of cell phones and the internet to post advertisements. Therefore, the evidence was sufficient on Counts 2 and 3.

### 3.    Count 4 – Transportation of Child Pornography.

In Count 4, Mr. Stovall was charged with transportation of child

pornography in violation of 18 U.S.C. § 2252A(a)(1) based on the photographs of Angel he took at sent to his daughter on December 11, 2020. (R. 32, p. 4.) In order to convict Mr. Stovall of this offense, the government had to prove that: (1) he knowingly transported using any means or facility of interstate commerce the images identified; (2) the images were child pornography; and (3) he knew the material depicted a minor and the minor was engaged in sexually explicit conduct. (R. 62, p. 37.)

The government proved at trial that Mr. Stovall was at the Amber Inn on December 11, 2020, because he reserved a room there. (T. Tr. 356-57.) The photographs of Angel include photos of her with her legs spread, exposing her genitals and breasts. (Gov't Ex. 314, 315.) The government also proved Mr. Stovall knew Angel was under the age of 18 based on her appearance in the photographs and the testimony of the agents who met with Angel confirmed she looked and acted young. (T. Tr. 347-48.) In addition, Shawnae told Mr. Stovall Angel was not appropriate for trafficking because, "she don't got no shape . . . this one's a no." (Gov't Ex. 314.) Mr. Stovall transported the images to Shawnae, the images of Angel's genitals were clearly child pornography, and Mr. Stovall knew Angel was a minor. Therefore, there is no argument the evidence was insufficient in this case.

C.    **Challenge to Jury Instructions.**

At the final pretrial conference, defense counsel objected to several proposed jury instructions.  (8/1/23 Tr. 21-27.)  The parties ultimately came to agreements, or defense counsel withdrew the objections, to all instructions except proposed instruction 35.  (T. Tr. 477-514.)  Proposed instruction 35 stated, "An offense may be committed by more than one person. A defendant's guilt may be established without proof that the defendant personally performed every act constituting the crime charged." (R. 80, p. 34.)  Defense counsel's objection was that, because the government had not charged aiding and abetting under 18 U.S.C. § 2, the jury should not be instructed on aiding and abetting theory. (8/1/23 Tr. 23.)  The government argued that the instruction went to the conspiracy charged in Count 1 and the court left it in.  (T. Tr. 512-14.)

A jury instruction will not be disturbed on appeal if the instruction fairly and accurately summarizes the law and has support in the record.  *United States v. Skoczen,* 405 F.3d 537, 549 (7th Cir. 2005).  In addition, pattern instructions are presumed to accurately state the law.  *United States v. Freed,* 921 F.3d 716, 721 (7th Cir. 2019).  The instruction given by the district court was the pattern instruction on joint ventures.  Seventh Circuit Pattern Criminal Jury Instructions, No. 5.05. This instruction was appropriate in a conspiracy case.

### D.     Challenge to the Victims not Testifying.

Mr. Stovall has informed counsel that he wants to argue that the

government's failure to call the victims' to testify was a violation of the Confrontation Clause.  Defense counsel made an assertion of a right to confront the victims prior to trial but the district court noted he made "no effort to apply well-established law explaining how to make a Confrontation Clause challenge." (R. 74, p. 6-7.)

The Sixth Amendment guarantees the accused in a criminal prosecution the right to be confronted with the witnesses against him. *See United States v. Protho,* 41 F.4th 812, 826 (7th Cir. 2022).  The Constitution protects a defendant from the admission of testimonial evidence absent confrontation but does not require that victims testify.  *See United States v. Biancofiori,* 2024 U.S. App. LEXIS 4668, *6 (7th Cir. Feb. 28, 2024), *citing Crawford v. Washington,* 541 U.S. 36, 53-54 (2004).  In the present case, the government did not offer testimonial statements from the non-testifying victims.  The evidence against Mr. Stovall came from his own text messages.  The only "statements" that came from the victims were their responses to Mr. Stovall's text messages.  *See United States v. Lewisby,* 843 F.3d 653, 658 (7th Cir. 2016) (holding text messages and responses between defendant and others are not admitted for the truth of the matter).  These statements were not "testimonial" because they were not admitted for their truth.  *See United States v. Graham,* 47 F.4th 561, 566-67 (7th Cir. 2022).  "The Confrontation Clause has no role to play in the admissibility of nonhearsay – 'testimonial statements

43

[admitted] for purposes other than establishing the truth of the matter asserted.'" *Id.*, *quoting Crawford,* 541 U.S. at 50, n. 9.

**E.     Limitation of Cross-Examination of Dr. Sharon Cooper.**

Defense counsel asked the district court to allow cross-examination of Dr. Cooper about a finding of bias during a trial in 1995, which was reported in a 1999 opinion from the Court of Appeals for the Armed Forces – *United States v. Barron,* 52 M.J. 1 (C.A.A.F. 1999).  (T. Tr. 150-152.)  The district court ultimately held he could not cross-examine her about the case because the conducted occurred almost 25 years prior and the circumstances were different than the present case.  (App. 23.)

Although specific instances of conduct may, in the discretion of the court, be introduced for the purpose of attacking credibility, the probative value of such evidence must still outweigh the danger of unfair prejudice, confusion of the issues, or misleading the jury.  *See United States v. Saunders,* 166 F.3d 907, 920 (7th Cir. 1999); Fed. R. Evid. 608(b).  The determination of whether the probative value of evidence outweighs its risk of unfair prejudice is left to the discretion of the trial court, and when that discretion has been exercised, as it has been here, it will rarely be disturbed.  *Id.*  Furthermore, the district court has wide latitude to impose reasonable limitations on cross-examination based on concerns about harassment, prejudice, confusion of the issues or interrogation that is only

marginally relevant.  *See United States v. Hernandez*, 84 F.3d 931, 934 (7th Cir. 1996) (holding that past civil rights suit against officer was improper basis for cross-examination because cross-examination was intended only to attack officer's general credibility and competence as an agent).

The district court's determination that the findings of bias in 1994 was too stale for cross-examination was not an abuse of discretion.  The facts of the 1994 case leading to the finding of bias were based on Dr. Cooper's interviewing of a victim.  That was not an issue in this case and any cross-examination on that issue would likely confuse the jury.  Therefore, there was no error in this case regarding cross-examination of Dr. Cooper.

**F.    The district court did not commit other reversible error at trial.**

Counsel cannot discern any nonfrivolous arguments concerning other trial matters.  Counsel has also reviewed the jury selection, opening statements, and closing arguments, but nothing of controversy occurred.  Mr. Stovall did not, for example, make a *Batson* challenge during jury selection (nor are there apparent grounds for such a challenge).  He did not raise any objections to the evidence at trial aside from the errors mentioned above.  There are no other possible arguments on appeal.

**G.    Ineffective Assistance of Counsel.**

Mr. Stovall has informed counsel he would like to argue that his trial

attorneys were ineffective during all stages of representation in the district court. However, this Court has repeatedly advised claims of ineffective assistance of counsel on direct appeal are "imprudent." *United States v. Hise,* 65 F.4th 905, 909 (7th Cir. 2023).

In short, counsel can discern no error in the trial proceedings, let alone a reversible error warranting a new trial.

**III.    Any argument challenging Mr. Stovall's sentence would be frivolous where his sentence was not imposed in violation of the law, was not the result of an incorrect application of the guidelines, and was not unreasonable.**

### A.    Standard of Review.

This Court reviews preserved challenges to the application of the guidelines for clear error and interpretations of the guidelines *de novo. United States v. Cobblah*, 118 F.3d 549, 550 (7th Cir. 1997).  After *Booker*, this Court reviews a defendant's sentence for reasonableness in light of the statutory factors in 18 U.S.C. § 3553(a).  *United States v. Booker*, 543 U.S. 220 (2005); *United States v. Hollins*, 498 F.3d 622, 629 (7th Cir. 2007).  Any sentence that is within the properly calculated sentencing guidelines range is entitled to a rebuttable presumption of reasonableness.  *Rita v. United States*, 551 U.S. 338 (2007).

Appellate review is two-fold.  First, the Court must consider whether the district court committed any procedural errors, such as failing to calculate or improperly calculating the guidelines range, selecting a sentence based on clearly

erroneous facts or failing to adequately explain the chosen sentence with an explanation as to why the judge deviated from the applicable guidelines range. *United States v. Lyons*, 733 F.3d 777, 784 (7th Cir. 2013). If there are no procedural errors, the Court analyzes the reasonableness of the sentencing using an abuse of discretion standard. *United States v. Rice*, 520 F.3d 811, 819 (7th Cir. 2008).

For challenges not made in the district court, the applicable standard of review depends upon whether the failure to raise the issue constituted a waiver or a forfeiture. *United States v. Staples,* 202 F.3d 992, 995 (7th Cir. 2000). Where waiver is accomplished by intent, forfeiture comes about through neglect. *Id.* Waiver extinguishes the error and precludes appellate review, but forfeiture, instead of precluding all appellate review, permits plain error review. *Id.* For a forfeited issue, therefore, there must be an error that is plain and that affects substantial rights. *United States v. Perry*, 223 F.3d 431, 433 (7th Cir. 2000).

### B. Legal Argument.

A defendant may only appeal a sentence imposed under the Sentencing Reform Act of 1984 if it was imposed in violation of law, was imposed as a result of an incorrect application of the sentencing guidelines, or was a departure from the applicable sentencing guidelines range and was unreasonable. 18 U.S.C. § 3742. Mr. Stovall's sentence of incarceration was not imposed in violation of law as his sentence of 268 months in prison on Counts 1, 2, and 3 did not exceed the

statutory maximum sentence on each count of life in prison. In addition, his

sentence of 60 months on Count 3 did not exceed the statutory maximum of 20

years.

Mr. Stovall has indicated to counsel he would like to argue he should have

received a lower sentence. For the sake of completeness in this *Anders* brief,

counsel will address all potential issues presented by this case. Counsel has

reviewed the record, conducted thorough research, and has concluded that the

district court properly applied the guidelines. Therefore, there is no non-

frivolous issue regarding the sentencing guidelines calculations in this case.

### 1.   Mr. Stovall's guidelines range was correctly calculated under the sentencing guidelines.

#### a.   Base Offense Level – Groups 1 and 2.

The base offense level for convictions under § 1591 is found in § 2G1.3.

The appropriate offense level under that section is found in subsection (b)(2)

because Mr. Stovall was convicted of an offense under § 1591(b)(2). Therefore,

there was no error regarding the base offense level for Groups 1 and 2.

#### b.   Undue Influence – Groups 1 and 2.

The probation officer applied a two level enhancement under §

2G1.3(b)(2)(B) and found that Mr. Stovall unduly influenced the minors to

engage in prohibited sexual conduct. (R. 109, p. 12-13.) Mr. Stovall objected to

this enhancement broadly, simply arguing that this enhancement applies in most

cases. (R. 103, p. 2-3.) The enhancement was appropriate applied to Groups 1 and 2. The guidelines state in the commentary that there is a rebuttable presumption that the enhancement applies if the defendant was more than 10 years older than the victim. U.S.S.G. § 2G1.3, App. Note 3(B). Mr. Stovall was 43 at the time of the offenses and the victims were between the ages of 12 and 16. He made no effort to rebut the presumption that the enhancement applies. Therefore, this enhancement was correctly assessed.

### c.      Use of Computer – Groups 1, 2, and 3.

Mr. Stovall received enhancements for using a computer to commit the offenses in all three groups under §§ 2G1.3(b)(3)(A) and (B) and § 2G2.2(b)(6). (R. 109, p. 12-13.) He objected to all of the enhancements based on his argument that they apply in every case and overstated his culpability. The district court found the enhancements were appropriate because Mr. Stovall used the internet to post photographs and advertisements for sex. In addition to posting on the website, Mr. Stoval used his cell phone to communicate with the victims and the customers and used Facebook through his phone to obtain and send photographs and communicate with Shawnae and the victims. The record is sufficient to provide support for these enhancements.

### d.      Commission of a Sex Act – Groups 1 and 2.

The probation officer assessed a two level enhancement under §
2F1.3(b)(4)(A) because the offenses charged in Counts 1, 2, and 3 involved the
commission of a sex act.  (R. 109, p. 12-13.)  Mr. Stovall objected to this
enhancement, arguing he was unable to have sex based on his health condition.
(R. 103, p. 3-5.)  The guideline provides for the enhancement if "the offense
involved the commission of a sexual act or sexual contact."  U.S.S.G. §
2G1.3(b)(4)(A).  The terms "sexual act" and "sexual contact" are defined by 18
U.S.C. § 2246(2) and § 2246(3), respectively.  U.S.S.G. § 2G1.3, App. Note 1.
Neither of the defining statutes require that the *defendant* was involved in the
sexual act or sexual conduct, only that the act or contact involved any other
person.  Therefore, it does not matter whether Mr. Stovall himself committed the
sexual act or conduct.  This enhancement was correctly applied.

### e.     Vulnerable Victim – Groups 1 and 2.

The probation officer assessed a two level enhancement because the
victims were unusually vulnerable.  (R. 109, p. 12-13.)  The guidelines provide for
this enhancement if the defendant knew or should have known that a victim of
the offense was a vulnerable victim. U.S.S.G. § 3A1.1(b)(1). A "vulnerable victim"
is defined as a victim of the offense of conviction or any relevant conduct "who is
unusually vulnerable due to age, physical or mental condition, or who is
otherwise particularly susceptible to the criminal conduct."  U.S.S.G. § 3A1.1,

App. Note 2.  The district court imposed the enhancement because of the ages of the victims, their unstable home environments, and that some of them were already working in the sex industry when they met Mr. Stovall.  This was ample support for the enhancement.

### f.      Role in the Offense – Groups 1 and 2.

The probation officer assessed a two level enhancement under § 3B1.1(c) based on Mr. Stovall's role as an organizer or leader of the sex trafficking offenses.  (R. 109, p 12-13.)  The officer based the enhancement on the fact that Mr. Stovall directed Shawnae what to post on megapersonals.com and collected the proceeds of the offense.  Defense counsel objected to the enhancement because Shawnae was never charged with an offense.  (Sent. Tr. 6-7.)  When giving this enhancement, the district court can consider the exercise of decision making authority, the nature of the defendant's participation, the recruitment of accomplices, the claimed right to a larger share of the proceeds, the planning and organizing of the offense, and the scope of the activity, among other factors. U.S.S.G. § 3B1.2, App. Note 4.  Mr. Stovall was clearly the main participant in directing the activity.  He had the bulk of the communications with the victims, decided which dates the victims would do, drove them to those dates, received more of the proceeds, set the prices, and gathered most of the photographs to

51

post online.  He directed his daughter when to post advertisements.  The

enhancement was correctly applied.


### g.    Base Offense Level – Group 3.

The probation officer determined the base offense level for the

transportation of child pornography offense was 22 under § 2G2.2(a)(2).  Mr.

Stovall did not object to this base offense level.  This is the appropriate subsection

that applies to this offense.  Therefore, this was not error.

### h.    Distribution of Child Pornography – Group 3.

The officer assessed a two level enhancement under § 2G2.2(b)(3)(F)

because Mr. Stovall distributed the images.  This was the correct enhancement

because Mr. Stovall sent the images he took of Angel to his daughter.  (Gov't Ex.

314.)

### i.    Pattern of Activity – Group 3.

The officer also assessed a five level enhancement because the offense

involved a pattern of activity involving the sexual abuse or exploitation of a

minor under § 2G2.2(b)(5).  (R. 109, p. 14.)  The guidelines define a "pattern of

activity involving the sexual abuse or exploitation of a minor" as "any

combination of two or more separate instances of the sexual abuse or sexual

exploitation of a minor by the defendant, whether or not the abuse or

exploitation (A) occurred during the course of the offense; (B) involved the same minor; or (C) resulted in a conviction for such conduct." U.S.S.G. § 2G2.2, App. Note 1.

Defense counsel objected to the enhancement because Mr. Stovall did not have the opportunity to cross-examine any of the victims at trial. (Sent Tr. 8.) The government stated that the enhancement applied because some of the victims told law enforcement they had sex with Mr. Stovall but it also applied because Mr. Stovall transported multiple minors to engage in sexual activity. (Sent. Tr. 7-8.) The court found that the enhancement applied based on Mr. Stovall's transportation of multiple minors for sexual activity. (App. 44.) This case indisputably involved "two or more instances" of sexual exploitation of a minor and the enhancement was correctly applied.

### k. Number of Images – Group 3.

The probation officer assessed an enhancement because the offense involved at least 10 images of child pornography under § 2G2.2(b)(7). The offense charged in Count 4 was the transportation of images of Angel but the relevant conduct in this case involved multiple images of Diamond, Janiyah, and Lamariyae as well. (Gov't Ex. 302a, 314a, 315a, 335a, 336a, 401a, 401b, 403, 506b.) Therefore, this enhancement was correctly applied.

### l. Criminal History Calculation.

Mr. Stoval received a total of 10 criminal history points.  He received three points for three separate convictions: a 2003 conviction for Armed Robbery with Threat of Force, for which he was sentenced to 10 years in prison; a 2017 conviction for theft, for which he was sentenced to two years in prison; and a 2017 conviction for burglary under § 4A1.1(a) for which he was sentenced to three years in prison.  (R. 109, p. 22.)  He received one criminal history point under § 4A1.1(e) because he received more than seven criminal history points and committed the instant offense while on probation.  (R. 108.)  All of these convictions were appropriately counted because he was sentenced to more than a year and a month in prison and he was incarcerated within 15 years of the instant offense.  *See* U.S.S.G. §§ 4A1.1(a), 4A1.2(k)(1).  Therefore, there is no error in the calculation of the guidelines range in this case.

### 2.     Mr. Stovall's sentence is reasonable.

Counsel has considered whether to challenge Mr. Stovall's sentence but has concluded that doing so would be frivolous.  His total sentence of 268 months in prison was below the total applicable guidelines range of life.  In addition, the court adequately addressed his mitigating arguments.  *See United States v. Velazquez,* 772 F.3d 788, 800-01 (7th Cir. 2014).  The district court adequately considered the mitigating sentencing factors by discussing the serious nature of the offense, Mr. Stovall's difficult childhood and poor health,

but noted that Mr. Stovall maintained his innocence.  Because the district court

addressed Mr. Stovall's primary mitigation arguments, it would be frivolous to

argue procedural error.  *See United States v. Modjewski*, 783 F.3d 645, 654-55 (7th

Cir. 2015). Therefore, there is no challenge to Mr. Stovall's sentence to be made

on appeal.

### 3.    The district court did not err in handling forfeiture and restitution in this case.

The superseding indictment contained a forfeiture allegation and indicated

the government sought forfeiture in the form of a personal money judgment

against Mr. Stovall for $225,600.  (R. 32.)  The government filed a motion for

preliminary forfeiture on November 22, 2023, and the district court granted the

motion and entered the preliminary order of forfeiture on November 27, 2023,

(R. 92, 95, 96.)  The probation officer summarized the request for forfeiture in the

PSR.  (R. 109, p. 7, 11.)  There is no other mention of forfeiture in the record –

none of the parties mentioned forfeiture during the sentencing hearing and there

is no forfeiture in the judgment.

18 U.S.C. § 1594(d) allows for forfeiture in cases where a defendant is

convicted under 18 U.S.C. §  1591 in an amount derived from the proceeds

traceable to the conviction.  18 U.S.C. § 1594(d), (e)(1).  Mr. Stovall would like to

argue on appeal he was entitled to a jury trial on the forfeiture allegations in this

case.  This Court has yet to decide whether a defendant is entitled to a jury trial

on forfeiture for a personal money judgment. However, the Eighth Circuit recently held that Rule 32.2 only allows for jury trial on forfeiture to determine the forfeitability of specific property, not a money judgment. *United States v. Unpradit,* 35 F.4th 615, 629 (8th Cir. 2022). The language of Rule 32.2(b)(5)(A), requires the jury to be retained to determine "the forfeitability of specific property," but not the forfeiture of a personal money judgment. Given this language, it appears there is no right to a jury determination of forfeiture for a personal money judgment.

However, even if there is a right to a jury trial in forfeiture for personal money judgment, Mr. Stovall did not request one during the proceedings in the district court. Any review would therefore be for plain error. *United States v. Fisher,* 943 F.3d 809, 814 (7th Cir. 2019). Under this standard, Mr. Stovall would have to show that no reasonable juror would not have found the required nexus between the amount of the money judgment and his crimes. *United States v. Guzman-Cordoba,* 988 F.3d 391, 401 (7th Cir. 2021). Given the discussion of the sufficiency of the evidence in this brief, there is no possible argument that no nexus existed.

Furthermore, the district court did not enter the a final judgment of forfeiture against Mr. Stovall and did not impose forfeiture at sentencing. The lack of oral pronouncement of forfeiture at sentencing deprives the district court

of the power to enter forfeiture. *United States v. Skaggs,* 78 F.4th 990, 993 (7th Cir. 2023). Therefore, there is no potential issue regarding forfeiture.

The government also sought restitution, which is mandatory in this case under 18 U.S.C. § 1593. Restitution can be calculated to include "the greater of the gross income or value to the defendant of the victim's services or labor." 18 U.S.C. § 1593(b)(3). Defense counsel recognized restitution was required in this case but noted Mr. Stovall was indigent. (R. 103, p. 7.) However, at no time did defense counsel object to the amount of restitution as calculated by the government. The district court found restitution was mandatory and imposed the amount calculated by the government. (App. 63.) This is not a potential issue for appeal.

**4.     The district court did not err by imposing the term or conditions of supervised release.**

The district court imposed a seven year term of supervised release on each count. (App. at 66.) Supervised release is part of the sentence imposed, so the district court's justifications for imposing the sentence of imprisonment also apply to the term of supervised release. *United States v. Bickart,* 825 F.3d 832, 839 (7th Cir. 2016). There is no potential issue regarding the terms of supervised release.

Mr. Stovall did not raise challenges to any conditions of supervised release and the district court imposed appropriate conditions that were either

57

mandatory or related to the offense conduct.  Defense counsel affirmatively waived any challenge to the conditions of supervised release when he raised no objection to them.  *See United States v. Anglin,* 846 F.3d 954, 967 (7th Cir. 2017) (holding that when the district court invites counsel to raise objections on conditions of supervised release and counsel declines the invitation, appellate review is waived.)  Therefore, there are no issues regarding the term or conditions of supervised release in this case.

## CONCLUSION

For the reasons stated herein, undersigned counsel respectfully requests

that this Court allow counsel to withdraw.

Respectfully submitted,
THOMAS W. PATTON
Federal Public Defender

s/ Johanna M. Christiansen
JOHANNA M. CHRISTIANSEN
Assistant Federal Public Defender

Attorneys for Defendant-Appellant,
BASHIEK STOVALL

**CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)(7)(B)**

The undersigned certifies that this brief complies with the volume

limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 32

in that it contains  words and  lines of text as shown by Microsoft Word 2016

used in preparing this brief.


s/  Johanna M. Christiansen
JOHANNA M. CHRISTIANSEN


Dated:  December 16, 2024

No. 24-1717

UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

vs.

BASHIEK STOVALL,
Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Illinois
Case No. 1:21-CR-00136
The Honorable Judge Joan Humphrey Lefkow

REQUIRED SHORT APPENDIX OF
DEFENDANT-APPELLANT, BASHIEK STOVALL

FEDERAL PUBLIC DEFENDER            THOMAS W. PATTON
CENTRAL DISTRICT OF ILLINOIS       Federal Public Defender
401 Main Street, Suite 1500
Peoria, Illinois 61602             JOHANNA M. CHRISTIANSEN
Telephone:  (309) 671-7891         Assistant Federal Public Defender
Fax:         (309) 671-7898
Email: Johanna_Christiansen@fd.org


                                   Attorneys for Defendant-Appellant,
                                   BASHIEK STOVALL

## CERTIFICATE OF COMPLIANCE WITH CIRCUIT RULE 30

The undersigned counsel for Defendant-Appellant, hereby states that all of

the materials required by Circuit Rule 30(a) and 30(b) are included in the

Appendix to this brief.


<u>s/  Johanna M. Christiansen</u>
JOHANNA M. CHRISTIANSEN
Assistant Federal Public Defender

Date:  December 16, 2024

## APPENDIX TABLE OF CONTENTS

Certification ...................................................................................................ii

Order Denying Motion to Dismiss...............................................................1

Excerpt of Final Pretrial Conference Transcript.........................................3

Excerpts of Jury Trial Transcript ...............................................................16

Order Denying Motion for New Trial .........................................................36

Transcript of Sentencing Hearing ..............................................................37

Judgment in a Criminal Case ......................................................................64

**IN THE UNITED STATES DISTRICT COURT FOR THE**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21 CR 136 |
| | ) | |
| BASHIEK STOVALL, | ) | Judge Joan H. Lefkow |
| | ) | |
| Defendant. | ) | |

**ORDER**

Defendant Bashiek Stovall's motion to dismiss (dkt. 58) is denied. See statement.

**Statement**

In this criminal prosecution, Stovall is charged with conspiracy to sex traffic a minor in violation of 18 U.S.C. § 1594(c) (Count I), sex trafficking a minor in violation of 18 U.S.C. § 1591 (Counts II and III), and transportation of child pornography in violation of 18 U.S.C. § 2252A(a)(1) (Count IV). (Dkt. 32.) Stovall now argues that 18 U.S.C. § 1591(c) is unconstitutionally vague, and that due process requires dismissal of Counts I–III because the indictment references § 1591(c) in each of those counts.[1]

As relevant here, 18 U.S.C. § 1591 provides:

(a) Whoever knowingly – (1) in or affecting interstate or foreign commerce, … recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; … knowing, or, … in reckless disregard of the fact, … that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided …

(c) In a prosecution under subsection (a)(1) in which the defendant had a reasonable opportunity to observe the person so recruited, enticed, harbored, transported, provided, obtained, maintained, patronized, or solicited, the Government need not prove that the defendant knew, or recklessly disregarded the fact, that the person had not attained the age of 18 years.

Under the void-for-vagueness doctrine, a criminal statute must "define an offense with sufficient clarity that an ordinary person has fair notice of what conduct is prohibited and so as to avoid arbitrary and discriminatory enforcement." *United States* v. *Cook*, 970 F.3d 866, 872 (7th

---

[1] The conspiracy count charges Stovall with conspiring to violate 18 U.S.C. § 1591. (Dkt. 32.)

Cir. 2020) (citing *Skilling* v. *United States*, 561 U.S. 358, 402–03 (2010)). Outside of the First Amendment context, which is not at issue here, courts generally consider vagueness arguments to be "as applied" challenges made "in light of the facts of the particular case." *Id.* at 873. Thus, "a litigant challenging the statute ordinarily must show that it is vague as applied to him; and if the statute undoubtedly applies to his conduct, he will not be heard to argue that the statute is vague as to one or more hypothetical scenarios." *Id.* Although facial challenges are disfavored, they may be permissible when the challenged statute "simply has no core" or lacks "any ascertainable standard for inclusion and exclusion." *Id.*

Here, Stovall makes no real effort to advance arguments within this framework. He provides no analysis connecting his abstract concerns about § 1591(c) to the particular facts of this case, nor does he explain why the court should deviate from the general practice and entertain a facial challenge to the statute. He spends much of his brief complaining about the Eighth Circuit's use of the phrase "person of ordinary intelligence" when describing the void-for-vagueness doctrine's ordinary person standard (dkt. 58 at 2 (quoting *United States* v. *Koech*, 992 F.3d 686, 688 (8th Cir. 2021)), but he appears to wrongly believe that the ordinary person test is part of the substantive criminal law rather than a tool of judicial review. In any event, Stovall presents no argument why the court should disregard controlling precedent by using a different standard to assess vagueness. And although Stovall recognizes that both the Eighth Circuit and the Eleventh Circuit have held that § 1591(c) is not void for vagueness (*see id.*), he makes no effort to show why those decisions are distinguishable from this case or explain why this court should adopt different reasoning in the absence of a Seventh Circuit ruling on this issue. *See Koech*, 992 F.3d at 688; *United States* v. *Whyte*, 928 F.3d 1317, 1331 (11th Cir. 2019).

To the extent Stovall makes a cognizable argument that § 1591(c) is void-for-vagueness, he contends that "merely observing someone is not a meaningful way in which to assess their age" (dkt. 58 at 1) and the lack of tolerance "for a good faith error when effort is expended to ascertain age … [unconstitutionally] creates a strict liability standard in a criminal context" (*id.* at 3). But § 1591 does not create a strict liability offense—although the statute alters the *mens rea* requirement as to the victim's age, it still includes "the traditional scienter requirement … that the offender must know or recklessly disregard the fact that the victim 'will be caused to engage in a commercial sex act.'" *Koech*, 992 F.3d at 688 (quoting 18 U.S.C. § 1591(a)). Furthermore, Supreme Court case law has long recognized that Congress may alter *mens rea* requirements in such a manner, particularly when defining sex offenses against minors. *See United States* v. *X-Citement Video, Inc.*, 513 U.S. 64, 72 n.2 (1994); *Lambert* v. *California*, 355 U.S. 225, 228 (1957). Stovall may disagree with the federal policy enacted in § 1591(c), but he cites no precedent and makes no argument contrary to this well-established authority. As Stovall has therefore failed to identify any constitutional infirmity in § 1591(c), much less sustain his burden in advancing a void-for-vagueness challenge, his motion to dismiss Counts I, II, and III of the indictment is denied.

Date: July 24, 2023

_____
U.S. District Judge Joan H. Lefkow

App. 2

<pre>
 1                    UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3    UNITED STATES OF AMERICA,        )
                                       )
 4              Plaintiff,             )
                                       )
 5      vs.                            )  No. 21 CR 136
                                       )
 6    BASHIEK STOVALL,                 )
      also known as Chuck,             )  Chicago, Illinois
 7                                     )  August 1, 2023
                Defendant.            )  11:13 o'clock a.m.
 8

 9                  TRANSCRIPT OF PROCEEDINGS -
                 Continued Final Pretrial Conference
10             BEFORE THE HONORABLE JOAN H. LEFKOW

11
      APPEARANCES:
12
      For the Government:    HON. MORRIS O. PASQUAL
13                           Acting United States Attorney
                             219 South Dearborn Street, Suite 500
14                           Chicago, Illinois  60604
                             (312) 353-5370
15                           BY:  MS. ERIKA L. CSICSILA
                                  MS. IRENE HICKEY SULLIVAN
16

17    For the Defendant:     THE CHICAGOLAND & SUBURBAN LAW FIRM
                             BY:  MR. AMIR I. MOHABBAT
18                           248 South Marion Street, Suite 104
                             Oak Park, Illinois  60302
19                           (815) 501-1345

20

21

22
                     COLLEEN M. CONWAY, CSR, RMR, CRR
23                        Official Court Reporter
                   219 South Dearborn Street, Room 1918
24                      Chicago, Illinois  60604
                             (312) 435-5594
25                  colleen_conway@ilnd.uscourts.gov
</pre>

1           The first -- let's see.  Defendant's motions *in*
2  *limine*.  Motion No. 1, to bar introduction of hearsay
3  statements by third parties.

4           I mean, that's granted, to the extent that you're
5  asking the Court to confirm that hearsay's not admissible
6  unless within an exception.  So --

7           Second motion, to bar evidence of defendant's prior
8  convictions.

9           If he chooses to testify, I will just defer ruling on
10 that to wait to see if he does testify.

11          No. 3, motion to bar evidence of defendant's prior
12 arrests not leading to a conviction.  Denied as moot or
13 uncontested.

14          No. 4, motion to bar non-disclosed 404(b) evidence,
15 is granted.

16          Let's see if I have something on that.  Oh, the
17 government says it does not intend to introduce 404(b)
18 evidence, so it's not disputed.

19          Motion to exclude references to gang membership.

20          And the government, again, does not intend to
21 introduce such evidence, so that's granted.

22          No. 6, motion to exclude terms and references to
23 certain words, I guess you would say it.

24          So the first one they use in reference to the term
25 "victim" and then "minor," on the basis that they're unduly

1  prejudicial.

2        So -- but in the reply brief, the defendant says it

3  would be tantamount to allowing the government to refer to a

4  defendant in a murder case as "the killer."  But that's

5  really, No. 1, raised in the reply brief and, No. 2, not

6  really apposite here.

7        But the argument has little merit on its own terms.

8  The word "victim" is, you know, customarily used in legal

9  language as the person who's been injured by criminal conduct,

10  and I really don't see anything wrong with that.  It's neutral

11  about who caused the harm.  And there's no reason to think

12  that, you know, unless I am shown otherwise, the government

13  intends to use the term in any way that would cause confusion

14  or prejudice.

15        I suppose our -- is the defendant asking that you not

16  use the age of the victim?  Or not using the term "minor,"

17  which is a legal term, again?

18        What's the problem with using the term "minor"?

19        MR. MOHABBAT:  Well, a few things, Your Honor.

20        First of all, the term "minor" is actually recited in

21  some of the counts of the indictment.  So if the government

22  can just speak to how somebody is a minor, it's effectively

23  testifying through the form of a question.

24        And paragraph 6(i) refers to specific ages.  Again,

25  if the government were to question someone and phrase the

1  question in such a way where it's presuming somebody being
2  beneath the age of 18, effectively the government is then
3  testifying through the question again.

4  THE COURT:  Well, I suppose that the government would
5  have to bring out with the witness what the term "minor"
6  means.

7  What's your response to this, you think?

8  MS. SULLIVAN:  Your Honor, the term "minor," as you
9  said, is a legal term that is part of the -- it's part of the
10  elements of the offense.  It's, in our view, commonplace and
11  not particularly inflammatory.

12  It also -- it's -- because it's commonplace, it would
13  be difficult to sensor witnesses from using that term.  And
14  I -- it's also really, you know, essential to the government's
15  proof.  The government will have to prove -- at, like, the
16  ages and years in school of the victim, if the government is
17  not permitted to use those terms, it, you know, limits the
18  government's ability to be able to prove that element of the
19  offense.

20  THE COURT:  All right.  Well, and also I would
21  instruct them on what it means, presumably, to be a minor, as
22  the law requires under the age of 18.

23  So I will overrule or deny that motion.

24  And then specific ages, again, same.  I accept what
25  the government says there.

1            And then what about school grade or level concerning

2 the people the government refers to as a "minor"?

3            I, you know -- that's, more or less, the same issue.

4 But, obviously, a person could be 18 and still be in high

5 school.

6            So do you intend to use those terms?

7            MS. SULLIVAN:  Are you -- Your Honor, you're

8 specifically asking about whether we'll refer to the grade

9 level of certain --

10            THE COURT:  Yes.

11            MS. SULLIVAN:  -- victims?  You know, our -- the

12 government's position is that information is -- if -- you

13 know, one of the elements of the offense is proving that the,

14 you know, victims were minors, and that evidence is

15 undoubtedly relevant.  And to the extent that, you know,

16 victims, you know, were in a younger grade level, that's

17 certainly highly probative of the charged offenses and is not

18 unduly prejudicial.

19            THE COURT:  You'll be calling victims, is that right?

20            MS. CSICSILA:  Your Honor, that is currently our

21 plan, as I'm sure you're familiar in these cases.

22            Some of these victims come from unstable

23 environments, and so, in complete candor, we have had

24 difficulty with communications with some of these victims.

25            THE COURT:  Uh-huh.

1          MS. CSICSILA:  So our plan is to call at least some
2    of them.

3          THE COURT:  Okay.

4          MS. CSICSILA:  And we will -- as soon as we have
5    clarity on that, we will let defense counsel know of when,
6    when we're more certain that the landscape has changed in
7    terms of calling victims.

8          THE COURT:  Uh-huh.  All right.  Do you have any
9    further argument, Mr. Mohabbat, on this?

10         Because, you know, my inclination is this is sort of
11   the natural way you would ask a witness, you know, about who
12   she is and what her life is, so --

13         MR. MOHABBAT:  Your Honor, I would also reference
14   Rule of Evidence 403.  I think getting into their school would
15   be unduly prejudicial.

16         The government can ask questions, open-ended
17   questions on direct examination about how old a witness is
18   without getting into school level and how they're doing in
19   school, where they go to school.

20         That seems to be unduly prejudicial.  It goes outside
21   what the government needs to prove to meet the elements of the
22   offenses.

23         THE COURT:  Well, I can limit the testimony if I
24   think it's going too far.  But I think just asking or letting
25   the witness testify about what grade she's in is not

1    prejudicial.  So we'll let it go at that.

2              Okay.  And, as I recall, items C through H on your

3    list are ones that you don't intend to -- the government

4    doesn't intend to offer evidence, is that correct?

5              MS. CSICSILA:  That's correct, Your Honor.

6              There may be -- the one exception may be C, which is

7    "use of" in reference to the term "family business."

8              At this time, we don't anticipate eliciting testimony

9    that would have that term in it.

10             If that changes, we'll obviously raise that with

11   defense counsel and with the Court and explain our reasoning

12   for why we might.

13             THE COURT:  All right.

14             MS. CSICSILA:  Why we believe that's probative.

15             THE COURT:  So I will reserve ruling on item C of

16   motion 6.

17             Okay.  Motion 7, to prohibit the government from

18   providing the jury with the indictment.

19             It's common practice in this district.  I have never

20   had it disputed before, that the indictment should go to the

21   jury.

22             I will instruct them that the indictment is not

23   evidence and is, you know, only what the charge is.

24             So I'll overrule that.  Or deny, I should say.

25             And motion to exclude references to sex-trafficking

1 people not specifically referenced as individuals trafficked
2 in the indictment.

3 So the basis of the motion isn't entirely clear
4 because the defense provides only six sentences of cursory
5 explanation in both the motion and the reply brief.

6 I guess the reference to "a person" in Count One of
7 the indictment -- this is the conspiracy count.  Conspiracy
8 count means the government can only use the information
9 related to victims identified in the indictment.  Other counts
10 is evidence in support of Count One.

11 Does that make sense, Mr. Mohabbat?  What is your
12 argument?  Let's put it that way.

13 MR. MOHABBAT:  Judge, I'll start with Counts Two,
14 Three, and Four, if I may?

15 These counts refer to -- or they're written in such a
16 way that they suggest one person was offended.

17 If the government is intending to call multiple
18 people to try to prove those counts, each one saying they are
19 the "an offended person," I think that goes beyond the scope
20 of what's permitted by Rule 403.

21 THE COURT:  I see.  Okay.  So response?

22 MS. CSICSILA:  Your Honor, I am not entirely certain
23 what defense counsel's argument is.

24 I mean, Count One standing alone, we need to be able
25 to prove which victims have -- are affected by the conspiracy.

1  There are no victims named in Count One, so we would need to
2  be able to prove some of those victims.

3       The defendant has had notice of which victims have
4  been identified in this case through the discovery and then
5  also, more pointedly, through our response to the motion where
6  we provided a more narrow list.  And also, just in our
7  conversations about our witness list and the witnesses we've
8  notified the Court that we intend to call.

9       So given the notice, there's no prejudicial effect on
10 the defense, you know, we -- they can -- they have the
11 materials and can be prepared to respond to the allegations.

12            THE COURT:  Okay.

13            MR. MOHABBAT:  If I may, Your Honor?

14            THE COURT:  Yes.

15            MR. MOHABBAT:  When I addressed the Court a moment
16 ago, speaking more particularly to Counts Two through Four,
17 and I think the government is speaking mostly about Count One,
18 so I'll broaden a little bit to include Count One.

19       In Count One, after we see Mr. Stovall's name in the
20 middle of the page, we go down one, two, three, four lines.
21 The third and fourth words are "a person."

22       I don't think the government's allegation here is
23 that Mr. Stovall participated in a conspiracy to recruit,
24 entice, harbor, so on and so forth, multiple people.  It
25 refers to a singular person.

1    So if witness No. 1, or however they want to label

2  them, were to testify that they are that person, with whatever

3  it is that they want to say within the rules, so be it.  But

4  if they have multiple people coming in, each one suggesting

5  they are that particular person, I think that's a problem.

6    THE COURT:  Okay.  Well, I don't agree with you in

7  the sense that, let's assume that there will be some doubt

8  about whether -- let's say there are three victim witnesses,

9  and there's some doubt about the credibility of one or more,

10  of two of those witnesses, in that they believe -- the jury

11  believed the third.  That would still be proof of "a person."

12    So No. 1, I don't see any problem with bringing in

13  more than one witness to establish the proof.  And so let's --

14  I'll stop with that.  That is denied.

15    And the other argument likewise, deny the motion.

16    Okay.  Government's motions 1, 3, 4, 5, 6, 8 through

17  12, and 14 are unopposed and, therefore, granted.

18    Motion 2.  Government asks the Court to exclude

19  evidence and argument regarding any victim's sexual history as

20  inadmissible evidence of sexual behavior or predisposition

21  under Rule of Evidence 412 and unduly prejudicial under Rule

22  403.

23    I think the government makes, you know, considerable

24  explanation of its position in its memorandum.  Mr. Stovall's

25  response only makes a cursory assertion that the Sixth

1  Amendment's confrontation clause entitles him to examine and
2  cross-examine witnesses, and argues that they may have
3  confused or mistaken Mr. Stovall for someone else in light of
4  their sexual actions and sexual history.

5          So what's the government's response to that?

6          MS. SULLIVAN:  Your Honor, in the -- in defendant's
7  response, he doesn't give any explanation for how sexual
8  history could be relevant to mistaken identity, nor is there
9  any -- nor has defendant asserted that he's -- as he notes in
10 his motion, that there's any sort of alibi defense at issue
11 here.

12         THE COURT:  Uh-huh.

13         MS. SULLIVAN:  So the -- and otherwise, the
14 government's -- otherwise, the questioning that defendant
15 seeks to elicit as false is not within any of the exceptions
16 of the rules.

17         So the government believes that the motion should be
18 granted.

19         THE COURT:  Okay.

20         MR. MOHABBAT:  If I may, please, Your Honor?

21         THE COURT:  Yes.

22         MR. MOHABBAT:  There seems to be, at least from what
23 I could find, little case law on this issue, so I cite to the
24 Sixth Amendment more broadly about the confrontation clause.

25         The discovery in this case seems to suggest that some

1   of the witnesses may have been trafficked by people not named

2   Bashiek Stovall.  And perhaps some of them may have even

3   trafficked each other.

4           So if they were to -- if a witness were to testify

5   about a particular date, place, time, so on and so forth, and

6   there might be an opportunity to cross-examine that witness to

7   indicate that there is reasonable doubt about this person's

8   memory or recollection, such that there they're mistaking Mr.

9   Stovall for somebody else, or confusing him for somebody else,

10  I think that line of questioning is proper, and I ask the

11  Court to allow that sort of examination.

12          THE COURT:  Well, I actually need to think about what

13  you say, but, you know, the law seems to be in favor of the

14  government here.  I -- you know, this is sort of impeachment

15  without any real basis that you know of in fact, so, you know,

16  that's problematic.

17          So I'll resolve this in my own mind and put that in

18  the order.

19          So motion 7, that's the one we talked about before,

20  about whether to use the residential burglary conviction as

21  impeachment.  So I reserve ruling.

22          Then we began to talk about motion 13 in our last

23  hearing.

24          The government seeks to admit a variety of business

25  records pursuant to the Federal Rule of Evidence 803(6) as a

1  record of regularly-conducted activity.  And 902(11),

2  provision for self-authentication of certified domestic

3  records of a regularly-conducted activity.

4          Mr. Stovall opposes the motion, making the cursory

5  objection that because cross-examination would speak to how

6  the creation of content and records is not evidence, that the

7  defendant created the content which triggered the records, or

8  is not evidence that the defendant created the content that

9  triggered the records, admitting the business records would

10 deprive him of his Sixth Amendment confrontation rights.

11         Again, he cites no authority to support the argument

12 and ignores precedent, holding that self-authentication under

13 Rule 902(11) does not violate the confrontation clause, such

14 as in *United States v. Ellis*, 460 F.3d 920, 927, citing

15 *Crawford v. Washington*, U.S. Supreme Court, 541, U.S. 36, and

16 explaining how to conduct a Rule 902(11) challenge, as in

17 *United States versus Green*, 648 F.3d 569, 579 to 81 (7th Cir.

18 2011).  And then there's a D.C. Circuit case on the same

19 issue.

20         So I grant that motion.

21         So that's that on the motions *in limine*, if I am not

22 mistaken.  So now let's turn to any other issues.

23         Proposed voir dire.  Are there any objections to the

24 proposed voir dire on either side?

25     (No response.)

App. 15

```
 1                    IN THE UNITED STATES DISTRICT COURT
                    FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                            EASTERN DIVISION

 3
     UNITED STATES OF AMERICA,        )
 4                                    )
                        Plaintiff,    )
 5                                    )      Docket No. 21 CR 136
                                      )
 6   -vs-                             )      Chicago, Illinois
                                      )      August 15, 2023
 7                                    )      9:37 a.m.
     BASHIEK STOVALL,                 )
 8                                    )
                        Defendant.    )
 9
                            VOLUME 2-A
10                   TRANSCRIPT OF PROCEEDINGS
        BEFORE THE HONORABLE JOAN HUMPHREY LEFKOW, and a Jury
11
     APPEARANCES:
12
     For the Government:    MS. ERIKA L. CSICSILA
13                          MS. IRENE HICKEY SULLIVAN
                            Assistant United States Attorneys
14                          Honorable Morris O. Pasqual
                            Acting United States Attorney
15                          219 South Dearborn Street
                            5th Floor
16                          Chicago, IL 60604

17   For the Defendant:     MR. AMIR I. MOHABBAT
                            The Chicagoland & Suburban Law Firm
18                          248 S. Marion Street
                            Suite 104
19                          Oak Park, IL 60302

20   Also Present:          MR. BASHIEK STOVALL
                            SPECIAL AGENT MATT ZMICH, FBI
21

22   Court Reporter:        SANDRA M. TENNIS, CSR, RPR, RMR, FCRR
                            Official Court Reporter
23                          United States District Court
                            219 South Dearborn Street, Room 2260
24                          Chicago, Illinois  60604
                            Telephone:  (312) 554-8244
25                          sandra_tennis@ilnd.uscourts.gov
```

Case: 1:21-cr-00136 Document #: 84 Filed: 09/27/23 Page 2 of 103 PageID #:490
Case: 24-1717   Document: 15      Filed: 12/16/2024   Pages: 144

150

 1      (Proceedings had in open court:)

 2            THE CLERK:  21 CR 136, USA versus Bashiek Stovall.

 3            MS. CSICSILA:  Good morning, your Honor.  Erika

 4   Csicsila and Irene Sullivan on behalf of the United States.

 5            THE COURT:  Good morning.

 6            MR. MOHABBAT:  Good morning, your Honor.  Amir

 7   Mohabbat for Bashiek Stovall, who is in court today.

 8            THE COURT:  Good morning.  Mr. Stovall, Good morning.

 9            THE DEFENDANT:  Good morning.

10            THE COURT:  All right.  Are we all ready?

11            MS. CSICSILA:  Yes, your Honor.  There is a

12   preliminary matter.  I don't know if we have time.

13            THE COURT:  The last juror just arrived, so is it

14   something we can handle quickly?

15            MS. CSICSILA:  Yes.  And maybe just to put you on

16   notice of the issue -- and then I have a case for you, if

17   you'd like -- we plan on calling Dr. Sharon Cooper who is a

18   pediatrician.  In 1999, there is a case that defense -- let me

19   back up.  Defense counsel would like to potentially

20   cross-examine her on a case, the *United States vs. Baron*.

21   It's from 1999, so it's almost 25 years old.

22            In that case -- it's a pretty unusual set of facts.

23   It was a military court where a -- where she was providing

24   expert testimony, having reviewed the victim files.  And I

25   believe she met with the victim in that case.  So it was a

1   different kind of testimony than the testimony we anticipate

2   she'll provide here, which is just general sex trafficking

3   education-type testimony.

4          So it's also -- cross-examination on this case I

5   believe is not consistent with Rule 608(b) which allows for

6   extrinsic evidence to be permitted on cross-examination if it

7   goes to truthfulness.  This is not related to truthfulness.

8          So for all of those reasons, it's not relevant.  The

9   opinion itself is hearsay and the judge's finding is hearsay.

10  The defense is not calling the judge who rendered the opinion.

11  For all those reasons, we oppose cross-examination on this

12  case.

13         THE COURT:  And the case is?

14         MS. CSICSILA:  It's *United States vs. Baron*.  And I

15  have a copy I can just hand up.

16         THE COURT:  Please.

17         Do you -- Mr. Mohabbat, do you have any argument to

18  make on this?

19         MR. MOHABBAT:  Yes, your Honor.  I'm not sure if the

20  defense is going to raise this issue, or not.  Even if your

21  Honor would allow me to raise it on cross-examination, I may

22  not because I discussed with Mr. Stovall it may provide some

23  grounds for redirect examination that I think the defense

24  would prefer to avoid.  But out of an abundance of caution, I

25  brought up that I may wish to raise it because I think it

Case: 1:21-cr-00136 Document #: 84 Filed: 09/27/23 Page 4 of 103 PageID #:492
Case: 24-1717    Document: 15       Filed: 12/16/2024    Pages: 144

152

1    speaks to Dr. Cooper's bias.  It's not extrinsic evidence.

2    I'm not trying to admit this Westlaw publication into

3    evidence.  But does it speak to bias about motives and

4    testifying?  Yes.  And on that basis, this examination should

5    be permitted, if I even choose to try.

6             THE COURT:  All right.  So with that, I'll look at

7    the case, and we'll go forward.  So I think --

8             MS. CSICSILA:  Thank you, Judge.

9             THE COURT:  Let's bring in the jury and get started.

10            MR. MOHABBAT:  Thank you.

11       (Jury in at 9:40 a.m.)

12            THE COURT:  Please be seated.  Good morning, ladies

13   and gentlemen of the jury.  We're about to hear the opening

14   statements of the attorneys.

15            I think, Ms. Csicsila, are you giving opening?

16            MS. CSICSILA:  I am.

17            THE COURT:  So Ms. Csicsila is going to go first.

18   And the purpose of opening statements is try to give you a

19   roadmap of what the evidence is going to be.  Her statements

20   are not evidence, and if at any time once you hear the

21   evidence there's any inconsistency, you must rely on the

22   evidence.  But what the -- and the same is true of the defense

23   attorney, Mr. Mohabbat.  However, opening statements are very

24   important to help you move along.

25            And after I've said that, I forgot to give you my

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF ILLINOIS
2                  EASTERN DIVISION

3
     UNITED STATES OF AMERICA,          )
4                                       )
                    Plaintiff,          )
5                                       )
     -vs-                               )   Case No. 21 CR 136-1
6                                       )
     BASHIEK STOVALL, also known        )
7    as Chuck,                          )   Chicago, Illinois
                                        )   August 15, 2023
8                   Defendant.          )   1:20 p.m.

9                       VOLUME 2-B
            TRANSCRIPT OF PROCEEDINGS - Trial
10    BEFORE THE HONORABLE JOAN H. LEFKOW, and a Jury

11   APPEARANCES:

12   For the Government:     HON. MORRIS O. PASQUAL
                             ACTING UNITED STATES ATTORNEY
13                           BY:  MS. ERIKA L. CSICSILA
                                  MS. IRENE HICKEY SULLIVAN
14                           219 South Dearborn Street, Suite 500,
                             Chicago, Illinois  60604
15                           (312)353-5300

16   For the Defendant:      THE CHICAGOLAND & SUBURBAN LAW FIRM
                             BY:  MR. AMIR I. MOHABBAT
17                           248 South Marion Street
                             Suite 104
18                           Oak Park, Illinois  60302
                             (815) 501-1345
19

20

21
     Court Reporter:
22
                     CHARLES R. ZANDI, CSR, RPR, FCRR
23                        Official Court Reporter
                       United States District Court
24              219 South Dearborn Street, Room 1222
                       Chicago, Illinois  60604
25                    Telephone:  (312) 435-5387
              email:  Charles_zandi@ilnd.uscourts.gov

Case: 1:21-cr-00136 Document #: 100 Filed: 02/23/24 Page 8 of 118 PageID #:788
Case: 24-1717    Document: 15    Zmiched: 12/03/2024    Pages: 144

258

1      (Proceedings heard at sidebar:)

2           MR. MOHABBAT:  Your Honor, concerning that *Baron*

3   opinion that Ms. Csicsila handed to you, do you have an

4   indication as to whether or not we can explore that matter

5   during cross-examination?

6           THE COURT:  Well, under Rule 609, extrinsic evidence

7   is not admissible to prove specific instances of a witness's

8   conduct in order to attack or support the witness's character

9   for truthfulness; but the Court may, on cross-examination,

10  allow them to be inquired into if they are probative of the

11  character or truthfulness of the witness.

12          So, under this language, it seems to me that defense

13  counsel could cross-examine Dr. Cooper about her conduct in

14  that case because it's relevant to her truthfulness or

15  credibility; however, I wouldn't let you go into the

16  particular facts of that case.  It would just be something in

17  the nature of that a court found that she had been a biased

18  witness or something like that.

19          MR. MOHABBAT:  Can you say that last part again, your

20  Honor?  I'm sorry.  I couldn't make out the last part.

21          THE COURT:  Okay.  A court ruled that she had been a

22  biased witness in another proceeding.

23          MR. MOHABBAT:  Understood.  Thank you.

24          MS. CSICSILA:  Your Honor, just for clarity, on

25  redirect, I would plan on asking her when that occurred,

Case: 1:21-cr-00136 Document #: 100 Filed: 02/23/24 Page 9 of 118 PageID #:789
Case: 24-1717    Document: 15    Zmiched: 12/06/2024    Pages: 144

259

1  because it did occur 25 years ago, and that it was a different
2  type of proceeding.  Her testimony was different in nature.
3  All of the things that I mentioned this morning I think are
4  fair redirect in he's going to raise the opinion.

5          THE COURT:  In what way was it different?  I mean,
6  how would you distinguish it?

7          MS. CSICSILA:  In this case, she's giving general
8  human trafficking sort of educational information for the
9  jury.  In the prior case, she had reviewed specific evidence
10 related to the victim in that case.  It was an eight-year-old
11 child.  And so she was opining about the injuries and the
12 trauma that the child had suffered.  She was an expert medical
13 witness in that regard.

14         It was also a military tribunal, which is different
15 procedurally in ways I'm not able to explain to the Court, but
16 I know that they are different procedural matters, ways
17 about -- they go about doing things.

18         THE COURT:  Well, I don't want to have satellite
19 litigation on this.

20         MS. CSICSILA:  And that's the government's fear
21 when -- I also think the age of the conduct.  She has
22 testified over -- she was going to count, but she's testified,
23 I think, at least 200 times after this incident.

24         And the case was affirmed on appeal, which I think is
25 also relevant for the jury to hear.

Case: 1:21-cr-00136 Document #: 100 Filed: 02/23/24 Page 10 of 118 PageID #:790
Case: 24-1717    Document: 15    Filed: 10/08/2024    Pages: 144

260

1          THE COURT:  You mean it was a conviction?

2          MS. CSICSILA:  It was a conviction that was affirmed,

3    notwithstanding this judge's finding.  So, it seems like a

4    total sideshow that --

5          THE COURT:  Do you have a response to that,

6    Mr. Mohabbat?

7          MR. MOHABBAT:  Your Honor, when I indicated this

8    morning we are considering using it, I think it was really

9    going toward the issue of bias.  And I understand if we are

10   allowed to explore it, and I think we are, the government can

11   redirect accordingly to rehabilitate if it thinks it needs to.

12         THE COURT:  Well, I am going to, I think, exercise my

13   discretion to keep it out because I don't think it's very --

14   it doesn't really -- I mean, this is an expert witness.  If

15   you had an expert to counter her testimony, that would be one

16   thing; but this is just attacking her for something that

17   happened more than 15 years ago, which would be criminal --

18   you know, a criminal conviction could be admitted into

19   evidence.

20         So, I will sustain the objection.

21         MS. CSICSILA:  Thank you, Judge.

22    (Proceedings heard in open court, jury present:)

23         MS. CSICSILA:  She just came in during the sidebar.

24         THE COURT:  Okay.  Good afternoon.

25         THE WITNESS:  Good afternoon, ma'am.

<pre>
 1                IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                          EASTERN DIVISION

 3
      UNITED STATES OF AMERICA,          )   No. 21 CR 136
 4                                       )
                 vs.                     )   Chicago, Illinois
 5                                       )
      BASHIEK STOVALL,                   )
 6                                       )   August 17, 2023
                      Defendant.         )   9:20 a.m.
 7

 8                          VOLUME 4-A
                TRANSCRIPT OF PROCEEDINGS - Trial
 9      BEFORE THE HON. JOAN HUMPHREY LEFKOW and a Jury

10
      APPEARANCES:
11
      For the Government:    MS. ERIKA L. CSICSILA
12                           MS. IRENE HICKEY SULLIVAN
                             United States Attorney's Office,
13                           219 South Dearborn Street, Room 500,
                             Chicago, Illinois  60604
14
      For the Defendant:     MR. AMIR I. MOHABBAT
15                           The Chicagoland & Suburban Law Firm,
                             248 South Marion Avenue, Suite 104,
16                           Oak Park, Illinois  60302

17

18

19

20

21

22
                          PATRICK J. MULLEN
23                       Official Court Reporter
                       United States District Court
24            219 South Dearborn Street, Room 1412
                       Chicago, Illinois  60604
25                         (312) 435-5565
</pre>

Case: 1:21-cr-00136 Document #: 102 Filed: 02/23/24 Page 7 of 76 PageID #:1056
Case: 24-1717    Document: 15        Filed: 12/16/2024    Pages: 144

526

1          (Witness excused.)

2          MS. CSICSILA:  Your Honor, at this time the Government

3    rests.

4          THE COURT:  All right.  So then, ladies and gentlemen

5    of the jury, I am going to excuse you briefly, but please

6    return to the jury room and we'll bring you back in a few

7    minutes.

8          (Jury out.)

9          MR. MOHABBAT:  Your Honor, at this time the defense

10   makes a motion for judgment of acquittal.

11         THE COURT:  All right.  The motion is denied.

12         MR. MOHABBAT:  And, Your Honor, it's actually my

13   practice to make a motion up to three times, once after the

14   Government rests, once after the defense rests, and once if the

15   jury comes back with a finding of guilt on any of the counts.

16         THE COURT:  All right.  Just a moment here.

17         (Brief pause.)

18         THE COURT:  All right.  Mr. Stovall and counsel, would

19   you come forward to the podium?

20         (Brief pause.)

21         MS. CSICSILA:  Your Honor, just before we do this, the

22   last witness that testified does plan on staying in the gallery

23   for the remainder of the trial.  It's a public -- I just wanted

24   to alert the Court and defense counsel, but I don't see any

25   issue with that.  It's a public hearing, and she's already

Case: 1:21-cr-00136 Document #: 102 Filed: 02/23/24 Page 8 of 76 PageID #:1057
Case: 24-1717    Document: 15         Filed: 12/16/2024    Pages: 144

527

1  testified.

2          MR. MOHABBAT:  I think that's fine, Judge.

3          THE COURT:  All right.

4          So, Mr. Stovall, you heard me instruct the jury that

5  it's the Government's burden to prove this case beyond a

6  reasonable doubt.  Do you remember that?

7          THE DEFENDANT:  Yes, ma'am.

8          THE COURT:  You don't have to testify.  You have an

9  absolute right to remain silent, and anything you say, if you

10  do testify, you know, is evidence in the case and can be used

11  against you if the jury chooses to do so.  But you do also have

12  the right to testify if you want to, and you have the right to

13  call witnesses if you want to.  So this is your, this is your

14  personal choice, and I'm just laying that out to you so that

15  you can tell me yourself, not through counsel, whether you wish

16  to testify or you wish to give up your right to testify.

17          THE DEFENDANT:  Well, I won't testify.

18          THE COURT:  All right.  Then that's all.  You can be

19  seated.

20          THE DEFENDANT:  All right.  Thank you.

21          THE COURT:  We can get the jury back.

22          MR. MOHABBAT:  Your Honor, before the jury comes back,

23  just as a housekeeping issue, when the Government was setting

24  up what I think is going to be part of their presentation for

25  the closing argument, I just saw a slide on the monitor.

Case: 1:21-cr-00136 Document #: 102 Filed: 02/23/24 Page 9 of 76 PageID #:1058
Case: 24-1717    Document: 15    Filed: 12/16/2024    Pages: 144

528

1    Perhaps we can just take up what is probably going to be an
2    objection if I did read the slide correctly, if we can have a
3    moment, please.

4              THE COURT:  Okay.

5              MR. MOHABBAT:  I think there was a slide that said
6    something along the lines of "defendant's own words" or
7    "defendant's own voice," something of the sort.  The Court has
8    made no finding that any voice heard was the defendant's or any
9    words came from the defendant, so I would object to that
10   characterization.

11             MS. CSICSILA:  Judge, it's argument.  This is
12   argument.  You're going to instruct the jury that what we say
13   is not evidence.  The reasonable inference from all of the
14   evidence is that this is the defendant's voice, and we should
15   be entitled to argue that.

16             THE COURT:  I think you're right; however, you might
17   point out it's for them to decide whether that's the
18   defendant's voice.  Okay.

19             MR. MOHABBAT:  If the Government makes that verbal
20   representation, "it's for you to decide," to the jury, then I
21   think that would at least somewhat balance what's on the slide.
22   So if the Government is agreeing to that, I would appreciate
23   that.

24             THE COURT:  Okay.

25             MR. MOHABBAT:  Thank you.

1           MS. CSICSILA:  Thanks, Judge.

2           THE COURT:  Oh, Mr. Mohabbat, does the defense have

3    any other witnesses or any witnesses?

4           MR. MOHABBAT:  No, Your Honor.  The defendant will not

5    put on a case.  I've discussed it with Mr. Stovall pursuant to

6    the rules of procedure and evidence.

7           THE COURT:  All right.

8           MR. MOHABBAT:  Thank you.

9           THE COURT:  So the evidence is closed.

10           MS. CSICSILA:  Yes, Your Honor.

11           MR. MOHABBAT:  And, Your Honor, at this time the

12    defendant makes the second motion for judgment of acquittal.

13    The defense has rested.

14           THE COURT:  All right.  The motion is denied.

15        (Jury in.)

16           THE COURT:  You may be seated.

17           So, ladies and gentlemen, the evidence is now closed,

18    and the next phase of the trial is for the lawyers for each

19    side to make their closing arguments.  Now, as I told you with

20    regard to the opening statements, the closing arguments are not

21    evidence.  You must rely on the evidence.  However, closing

22    argument is intended to help put all of the evidence together

23    and to attempt to persuade you to return a verdict in favor of

24    the side that's arguing.

25           So I ask you now to give Ms. Csicsila the --

```
 1              IN THE UNITED STATES DISTRICT COURT.
             FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                      EASTERN DIVISION

 3
     UNITED STATES OF AMERICA,        )
 4                                    )
                        Plaintiff,    )
 5                                    )
     -vs-                             )  Case No. 21 CR 136-1
 6                                    )
     BASHIEK STOVALL, also known      )
 7   as Chuck,                        )  Chicago, Illinois
                                      )  August 17, 2023
 8                      Defendant.    )  12:45 p.m.

 9                        VOLUME 4-B
             TRANSCRIPT OF PROCEEDINGS - Trial
10     BEFORE THE HONORABLE JOAN H. LEFKOW, and a Jury

11   APPEARANCES:

12   For the Government:     HON. MORRIS O. PASQUAL
                             ACTING UNITED STATES ATTORNEY
13                           BY:  MS. ERIKA L. CSICSILA
                                  MS. IRENE HICKEY SULLIVAN
14                           219 South Dearborn Street, Suite 500,
                             Chicago, Illinois  60604
15                           (312)353-5300

16   For the Defendant:     THE CHICAGOLAND & SUBURBAN LAW FIRM
                             BY:  MR. AMIR I. MOHABBAT
17                           248 South Marion Street
                             Suite 104
18                           Oak Park, Illinois  60302
                             (815) 501-1345
19

20

21
     Court Reporter:
22
                      CHARLES R. ZANDI, CSR, RPR, FCRR
23                         Official Court Reporter
                        United States District Court
24           219 South Dearborn Street, Room 1222
                        Chicago, Illinois  60604
25               Telephone:  (312) 435-5387
               email:  Charles_zandi@ilnd.uscourts.gov
```

1          (Proceedings heard in open court:)

2          THE COURT:  I have a note from the jury that says they

3  have reached a verdict.  So, we'll bring in the jury.

4  If anyone wants to see the note, we have it here.

5          (Jury enters courtroom.)

6          THE COURT:  You may be seated.  Ms. Sotzen?

7          THE FOREPERSON:  Yes.

8          THE COURT:  There you are.  I understand the jury has

9  reached a verdict, is that correct?

10          THE FOREPERSON:  That's correct.

11          THE COURT:  Would you pass the verdict to our Marshal,

12  please.

13          This is the indictment, so just so you know what the

14  papers are.

15          All right.  I will ask the clerk to announce the

16  verdict.

17          THE CLERK:  All right.  "In the case of United States

18  versus Bashiek Stovall, Count 1, We, the Jury, find the

19  Defendant, Bashiek Stovall, guilty.

20          "Count 2, we, the Jury, find the Defendant, Bashiek

21  Stovall, guilty.

22          "Count 3, we, the Jury, find the Defendant, Bashiek

23  Stovall, guilty.

24          "Count 4, we, the Jury, find the Defendant, Bashiek

25  Stovall, guilty."

Case: 1:21-cr-00136 Document #: 102 Filed: 02/23/24 Page 72 of 76 PageID #:1121
Case: 24-1717   Document: 15        Filed: 12/16/2024   Pages: 144

591

1        Signed by 12 jurors, dated August 17, 2023.

2        THE COURT:  Is this your verdict?

3     (Chorus of yeses.)

4        THE COURT:  So say you all?

5     (Chorus of yeses.)

6        THE COURT:  All right.  I take that as everyone

7  nodding or saying, "yes," aloud.  Would you say, "yes," aloud.

8     (Chorus of yeses.)

9        THE COURT:  Okay.  Thank you.  The clerk will enter

10 judgment on the verdict.

11       I want to take this opportunity to thank all of you

12 for your participation in this case as a citizen juror.  As I

13 told you before, it's a big responsibility.  It's also a

14 privilege to see how the justice system works and to be part of

15 the system yourself.

16       So, let me just give you a couple of instructions --

17 or I guess they're instructions.  You are free to talk about

18 the case if you want to.  Of course, you don't have to if

19 anyone -- if you choose not to.

20       The attorneys are not allowed to contact you in any

21 way.

22       If you want to stay behind -- you're going to be

23 released momentarily, but if you want to stay behind, I'd be

24 glad to come down and thank you personally; and if you have any

25 questions that I can answer, I would be glad to do that.

Case: 1:21-cr-00136 Document #: 102 Filed: 02/23/24 Page 73 of 76 PageID #:1122
Case: 24-1717    Document: 15        Filed: 12/16/2024    Pages: 144

592

1              So, on behalf of the United States District Court and

2    the attorneys for the government and the defense, I thank you

3    for your service.  You are excused.

4              MR. MOHABBAT:  Judge, I'm sorry to interrupt you.  Can

5    we please poll the jury individually?

6              THE COURT:  Yes, we can.

7              MR. MOHABBAT:  Thank you.

8              THE COURT:  So, when we say, "poll the jury," that

9    means we'll ask each of you individually if this is your

10   verdict.  So, again, our courtroom clerk will ask you.  And

11   please respond orally.

12             THE CLERK:  Erika Betancourt, is this your verdict?

13             JUROR BETANCOURT:  Yes.

14             THE CLERK:  Charisse Brock, is this your verdict?

15             JUROR BROCK:  Yes.

16             THE CLERK:  Anna Chesney, is this your verdict?

17             JUROR CHESNEY:  Yes.

18             THE CLERK:  Michael Dowdy, is this your verdict?

19             JUROR DOWDY:  Yes.

20             THE CLERK:  Robert Garbacz, is this your verdict?

21             JUROR GARBACZ:  Yes.

22             THE CLERK:  Abigail Kim, is this your verdict?

23             JUROR KIM:  Yes.

24             THE CLERK:  Maria Kloess, is this your verdict?

25             JUROR KLOESS:  Yes.

1          THE CLERK:  Caprice Lowenberg, is this your verdict?

2          JUROR LOWENBERG:  Yes.

3          THE CLERK:  Steve Polodna is this your verdict?

4          JUROR POLODNA:  Yes.

5          THE CLERK:  Mark Potempa, is this your verdict?

6          JUROR POTEMPA:  Yes.

7          THE CLERK:  Tom Rajca, is this your verdict?

8          JUROR RAJCA:  Yes.

9          THE CLERK:  And Brittani Sotzen, is this your verdict?

10         THE FOREPERSON:  Yes.

11         THE COURT:  All right.  Then you are excused.

12      (Jury exits courtroom.)

13         THE COURT:  All right.  Do you want to set dates for

14   post-trial motions?  Or we can have a status next week if you

15   prefer.

16         MR. MOHABBAT:  Yes, your Honor.  At this time, as I

17   indicated, the defense makes the third oral motion for judgment

18   of acquittal.

19         THE COURT:  All right.  And that motion is denied.

20         MR. MOHABBAT:  And then pursuant to Rule 29, we have

21   14 days to file an appropriate motion for a judgment of

22   acquittal.  May I ask for -- well, depending on how long the

23   transcripts may take, may I ask for maybe 30 days beyond the

24   date the transcripts are completed?

25         THE COURT:  Yes.  We don't have an exact date.  So,

 1 │ let's say 45 days from today, or approximately, and then if you

 2 │ need more time, we can extend the time.

 3 │          MR. MOHABBAT:  Thank you, your Honor.

 4 │          THE COURT:  So, do you have that -- what that date

 5 │ would be?

 6 │          THE CLERK:  I do.  That would be October 4th, just for

 7 │ a status?

 8 │          THE COURT:  For the motions for --

 9 │          THE CLERK:  By October 4th.

10 │          THE COURT:  Post-trial motions, October 4.

11 │          28 days to respond?  Is that good enough?

12 │          MS. CSICSILA:  Yes, your Honor, that's fine.  And we

13 │ may be able to do it sooner.

14 │          THE COURT:  All right.  And if you want to file a

15 │ reply, 14 days.

16 │          MR. MOHABBAT:  Yes, your Honor.

17 │          THE COURT:  All right.  Is there anything else that I

18 │ need to cover that I haven't covered?

19 │          MR. MOHABBAT:  Would your Honor like to set the

20 │ sentencing date after the resolution of the post-trial motions?

21 │ I think that would be appropriate.

22 │          THE COURT:  Yes, I guess so.  We'll ask the Probation

23 │ Office to go ahead and do the presentence report.

24 │          So, Mr. Stovall, the jury has spoken.  You will

25 │ be contacted by a probation officer at some point to do a

1   background investigation or a report.  The report is to advise

2   me and to be helpful in sentencing.  You'll get -- you know, be

3   interviewed and be asked a lot of questions.  So, your attorney

4   can be present for that interview if you wish.

5          THE DEFENDANT:  All right.

6          THE COURT:  Okay.

7          MS. CSICSILA:  Thank you, Judge.

8          MS. SULLIVAN:  Thank you, your Honor.

9          MR. MOHABBAT:  Thank you, your Honor.

10      (Which were all the proceedings heard.)

11                        CERTIFICATE

12      We certify that the foregoing is a correct transcript from

13   the record of proceedings in the above-entitled matter.

14

15   */s/Patrick J. Mullen*          *September 28, 2023*

16   Patrick J. Mullen                Date
     Official Court Reporter

17

18
     */s/Charles R. Zandi*           *September 28, 2023*
19
     Charles R. Zandi                 Date
20   Official Court Reporter

21

22

23

24

25

**UNITED STATES DISTRICT COURT**
**FOR THE Northern District of Illinois – CM/ECF NextGen 1.7.1.1**
**Eastern Division**

UNITED STATES OF AMERICA
                                        Plaintiff,

v.                                                  Case No.: 1:21−cr−00136
                                                    Honorable Joan H. Lefkow

Bashiek Stovall
                                        Defendant.

---

**NOTIFICATION OF DOCKET ENTRY**


This docket entry was made by the Clerk on Wednesday, November 29, 2023:


        MINUTE entry before the Honorable Joan H. Lefkow: Defendant's motion for
judgment of acquittal [89] is denied. A judgment of acquittal is appropriate "only when
the evidence is insufficient to sustain the conviction." United States v. James, 464 F.3d
699, 705 (7th Cir. 2006); Fed. R. Crim. P. 29. Defendant acknowledges that the court
must consider all of the evidence in the light most favorable to the government and
conclude that no reasonable fact−finder could have found the existence of each element of
the crime beyond a reasonable doubt. (See dkt [89] at 2, quoting United States v. Kitchen,
57 F.3d 516, 529 (7th Cir. 1995). Defendant argues here, as he did to the jury, that the
evidence of tattoos on the body of the victims in Exhibits 401c and 506b, combined with
an Illinois law prohibiting tattooing the body of a person under the age of 18, Ill. Comp.
Stat. 5/12C−35, points to the necessary conclusion that the victims depicted were at least
18 years of age. That the jury chose to reject this argument in the face of other evidence,
including the victims' birth certificates demonstrating that the victims were not yet 18, was
not unreasonable. Mailed notice (ags)




**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of
Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was
generated by CM/ECF, the automated docketing system used to maintain the civil and
criminal dockets of this District. If a minute order or other document is enclosed, please
refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our
web site at ***www.ilnd.uscourts.gov***.

1                   UNITED STATES DISTRICT COURT
                NORTHERN DISTRICT OF ILLINOIS
2                     EASTERN DIVISION

3

     UNITED STATES OF AMERICA,       )
4                                )
               Plaintiff,          )
5                                )
              vs.                ) No. 21 CR 136
6                                )
     BASHIEK STOVALL,             ) Chicago, Illinois
7                                ) April 24, 2024
              Defendant.          ) 1:30 p.m.
8

9           TRANSCRIPT OF PROCEEDINGS - Sentencing

10       BEFORE THE HONORABLE JOAN HUMPHREY LEFKOW

11

    APPEARANCES:
12

    For the Plaintiff:         UNITED STATES ATTORNEY'S OFFICE
13                             BY:   MS. IRENE HICKEY SULLIVAN
                               MS. ERIKA L. CSICSILA
14                          219 South Dearborn Street, Fifth Floor
                         Chicago, Illinois   60604
15                          (312) 353-5300

16

17     For the Defendant:        THE CHICAGOLAND & SUBURBAN LAW FIRM
                            BY:   MR. AMIR I. MOHABBAT
18                          248 South Marion Street, Suite 104
                         Oak Park, Illinois   60302
19                          (815) 501-1345

20

    ALSO PRESENT:             MS. KATHY KIRIKLAKIS, U.S. Probation
21

22

23     Official Court Reporter:   NANCY L. BISTANY, CSR, RPR, FCRR
                         219 South Dearborn Street, Room 1706
24                          Chicago, Illinois 60604
                         (312) 435-7626
25                          *nancy_bistany@ilnd.uscourts.gov*

```
 1              (Proceedings heard in open court:)
 2                   THE CLERK:  21 CR 136, USA versus Bashiek Stovall.
 3                   THE COURT:  Good afternoon.
 4                   MS. SULLIVAN:  Good afternoon, Your Honor.
 5                   Irene Sullivan and Erika Csicsila on behalf of the
 6      United States.
 7                   THE COURT:  Oh, Ms. Csicsila as well.
 8                   MS. CSICSILA:  Good afternoon.
 9                   MR. MOHABBAT:  And good afternoon, Your Honor.
10                   Amir Mohabbat, M-o-h-a-b-b-a-t, for Mr. Bashiek
11      Stovall, who is seated at defense table.
12                   THE COURT:  Okay.
13                   MS. KIRIKLAKIS:  Good afternoon, Your Honor.
14                   Kathy Kiraklakis, U.S. Probation.
15                   THE COURT:  All right.  Good afternoon to you.
16                   Mr. Stovall, would you step forward, please, for a
17      moment?  If you want to be seated later, that's okay.  Good
18      afternoon to you.
19                   THE DEFENDANT:  Good afternoon.
20                   THE COURT:  Just so you know how I intend to proceed,
21      first let me tell you that I have read all the materials that
22      were submitted, your attorney's memorandum, the government, the
23      Presentence Report, and all of those.
24                   Have you had the opportunity to read these materials?
25                   THE DEFENDANT:  Yes.
```

1          THE COURT:  You have.  Okay.  So I know there are

2     some guidelines issues here.  I will rule on those and then any

3     other objections that were made to the Presentence Report, and

4     then I'll make your guidelines calculation.  And from there I

5     will ask your attorney to speak on your behalf, and then the

6     government attorney will respond.

7          Before I impose a sentence, I will give you the

8     opportunity to speak to me directly to say anything you would

9     like to say.

10         All right.  Are you comfortable standing or would you

11    prefer to sit while we go through the guidelines issues?

12         THE DEFENDANT:  I can stand.

13         THE COURT:  Okay.  All right.  So I don't recall

14    objections to facts.  Are there some?

15         MR. MOHABBAT:  Yes, Your Honor, a few general

16    corrections.  For example, there's a reference to an earlier

17    version of the guidelines being at issue, but it should

18    correctly say November 2023.

19         Also on -- pursuant to paragraph 96 of the PSR, it

20    references there should be a two-level enhancement.  The

21    defense calculation is there should only be a one-level

22    enhancement, again, pursuant to November 2023 guidelines.

23         Then concerning paragraphs 9 and 75 of the PSR, we

24    disagree with the characterization that Mr. Stovall declined

25    to -- he declined to discuss the case.  He maintains his

1  innocence.  It doesn't mean he declined to discuss it.

2  Moreover, he did not decline to discuss his criminal

3  history, and no such advice was given.  I think that's

4  boilerplate PSR language that appears from prior cases.  I have

5  learned that.

6  THE COURT:  Yes.

7  MR. MOHABBAT:  Those are the factual corrections.

8  Then we can get into the objections to the offense level

9  computation.

10  THE COURT:  Okay.  So on the guidelines -- applicable

11  guidelines, is that a -- does that make a difference in the

12  calculation?

13  MR. MOHABBAT:  I think pursuant to paragraph 96, it

14  does.  As opposed to there being a two-level enhancement, I

15  think there should only be one.

16  THE COURT:  It should be one.  You agree with that?

17  MS. SULLIVAN:  That's correct, Your Honor.  It means

18  the defendant will have 10 criminal history points instead of

19  11, although his criminal history category either way is V.

20  THE COURT:  Okay.  So, Ms. Kiriklakis, do you agree

21  that that's correct?

22  MS. KIRIKLAKIS:  We prepared the report just a few

23  days before the new guideline went into effect, so that's why

24  we still had 2021.

25  THE COURT:  I see.

1            MS. KIRIKLAKIS:  So we can change -- it would be a

2       statement of correction reflecting 2023 guideline manual for

3       the offense level computations and for criminal history.  And

4       we'll subtract that -- one of those -- the recency points.

5            THE COURT:  Okay.  Thank you.

6            Now, the issue about whether or not he declined to

7       discuss the offense, which is, as you say, boilerplate; but it

8       seems to me that that's customary in this district, right?

9            Do you ask them if they want to discuss the

10      defense -- offense?

11           MS. KIRIKLAKIS:   It's typical -- there is boilerplate

12      language, and I don't recall us discussing the details.

13      Sometimes people will admit if they were on probation or in

14      custody.

15           I can't recall exactly, but I don't think we

16      discussed any of that in detail.  Especially with this being a

17      trial case, I was trying to be careful.

18           THE COURT:  Well, the only thing would be whether to

19      take out the sentence that you asked him or he declined, which

20      would imply that he was asked to discuss the details of the

21      offense, correct?  Let me take a look at --

22           MS. KIRIKLAKIS:  Your Honor, we can prepare a

23      corrected PSI for that and delete the sentence if the parties

24      want that -- if the Court wants that.

25           THE COURT:  Right.  Do you want that?

1    MR. MOHABBAT:  Yes, concerning both paragraphs 9 and

2    75, please.

3         THE COURT:  Okay.  We'll do that.

4         Now, what else?  I'm trying to find the Presentence

5    Report on my screen here, so give me a moment.

6         Is there anything else on the factual findings?

7         MR. MOHABBAT:  For the factual findings, I think that

8    is all, Your Honor.

9         THE COURT:  Okay.  So then I may not need it, but I

10   found it.

11        Okay.  So now let's turn to guideline calculation.

12   So as I understand it, the defense is essentially saying that

13   some of these enhancements are -- or at least the use of a

14   computer enhancement is a -- it shouldn't be an enhancement

15   because use of a computer is part of an offense typically or in

16   almost all cases.  Is that fair to say?

17        MR. MOHABBAT:  Yes, Your Honor.  I think government

18   witness, Dr. Sharon Cooper, testified to that effect as well.

19        THE COURT:  Okay.  Well, I -- it is in the

20   guidelines, so it is.  And I think I would disagree,

21   particularly in this case where these photographs were posted

22   on a website where others -- you know, the public would have

23   access to it.  It seems to me that is an aggravating

24   circumstance here.  So I overrule that objection.

25        Then we have leader/organizer of criminal activity,

1  which I think your argument is that the daughter was never

2  charged; and therefore, he shouldn't be considered a leader.

3          Is that what you're saying?

4          MR. MOHABBAT:  Yes, Your Honor, we think this

5  enhancement is inapplicable for that reason.  And if it were to

6  apply, we think it would overstate culpability, because nobody

7  else in this district or in any other case was charged.

8          THE COURT:  All right.  Do you have a response to

9  that?

10          MS. SULLIVAN:  Yes, Your Honor.  There's nothing in

11  the -- in the guidelines that requires that any other

12  participants in the criminal activity be charged or convicted

13  of any offense.  And the jury found beyond a reasonable doubt

14  that he conspired with his then minor daughter.

15          THE COURT:  Well, I think that's correct.  So that

16  objection is overruled.

17          Next is a pattern of activity.  There's a five-point

18  enhancement for engaging in a pattern of activity involving

19  sexual abuse or exploitation of a minor.  So the fact dispute

20  is whether the defendant actually did have sexual intercourse

21  with one or more of the girls.  Is that right?

22          MS. SULLIVAN:  Yes, Your Honor.

23          THE COURT:  And you had evidence of that?

24          MS. SULLIVAN:  Multiple of the victims told the FBI

25  in their interviews that they did have sexual intercourse with

1    the defendant.  However, even if that weren't -- even assuming

2    that defendant's factual version is true, he did transport

3    multiple minors to engage in sexual activity for personal gain,

4    and the enhancement should apply for that reason as well.

5          THE COURT:  All right.  It was a pattern of conduct.

6    All right.

7          Mr. Mohabbat.

8          MR. MOHABBAT:  Yes, Judge.  Mr. Stovall did not have

9    a chance to examine -- to cross-examine anyone who says that

10   they had sex with Mr. Stovall.  So I would ask you not to put

11   any weight into such uncorroborated statements that are

12   purportedly now being used against Mr. Stovall.

13         Moreover, concerning the trafficking of minors in

14   general, Mr. Stovall maintains his innocence, and for that

15   reason also objects.

16         THE COURT:  Okay.  Well, without -- I believe that

17   the enhancement applies based on the transportation of multiple

18   minors to engage in sexual activity for his gain.  So I will

19   overrule that objection as well.

20         So are there any others that you have?

21         MR. MOHABBAT:  Some of them repeat, Your Honor, but I

22   think you have addressed them.

23         THE COURT:  Okay.  Now, there is a vulnerable victim.

24   I think you did object to that, too, right?

25         MR. MOHABBAT:  Yes, Your Honor.

1             THE COURT:  But I don't see any real basis for the

2    argument.

3             MR. MOHABBAT:  Just going back to how such an

4    allegation seems to be standard in this type of case pursuant

5    to Dr. Cooper's testimony.

6             THE COURT:  Okay.  Well, considering the age of these

7    girls -- and I don't know if you have any other thing to say

8    about that, Ms. Sullivan?

9             (Discussion off the record.)

10            MS. SULLIVAN:  Right.  Your Honor, there's additional

11   factors that support -- additional facts that support the

12   vulnerable victim enhancement.  First, that regarding one of

13   the victims, defendant met her when she was only 14 years old;

14   and after that first night of working for him, she stayed with

15   him for a week.

16            That same victim was also arrested for being a

17   runaway minor when she was in the defendant's presence.  All

18   that should have signaled to defendant that she had an unstable

19   home situation.

20            A second victim was already working in the sex

21   industry when defendant met her, which also should have

22   signaled to defendant that these girls were willing to have sex

23   in order to make ends meet and were vulnerable for that reason

24   as well.

25            THE COURT:  All right.  I believe that it is

1  justified to add that enhancement.  Okay.  I think that takes

2  care of that.

3        So the guideline range is -- or the offense level is

4  33 adjusted, and the criminal history category is V, correct?

5        MR. MOHABBAT:  Did you mean to say 43, Your Honor?

6        THE COURT:  Maybe.  I was reading on the wrong line,

7  so I would say I didn't intend that.  But, yes, you are

8  correct, 43 and V.

9        So the range is actually life in prison.  And we do

10  have mandatory minimum of 10 years on one of the counts.  Which

11  one is it?

12        MR. MOHABBAT:  Counts Two and Three, Your Honor.

13        THE COURT:  Two and three.  Okay.

14        So all right.  Mr. Mohabbat, what do you --

15        MS. SULLIVAN:  Your Honor, just to make -- for the

16  record, just to make it clear, defendant also made a similar

17  objection that you discussed to -- for the use of a computer

18  enhancement, that the enhancement -- or that it would apply so

19  broadly as to basically increase the offense level.

20        He made that same objection for the undue influence

21  enhancement, the commission of a sex act enhancement for the

22  trafficking accounts.  And then he also made it -- he made it

23  for the use of a computer enhancement for the transportation of

24  child pornography count.

25        So I just wanted to make sure that the Court had

1    ruled on those objections as well.

2    THE COURT:  Well, I took it from defense counsel's

3    remarks that he was satisfied I had ruled on all of them, which

4    means I've overruled all of them.

5    Do you have anything to the contrary to say about

6    that?

7    MR. MOHABBAT:  That was also my understanding.  Most

8    of the objections give rise to how they tend to be applicable

9    to any sort of case of this sort, and Dr. Cooper testified how

10   they're very common.

11   And so to create a penalty upon a penalty, so to

12   speak, seems to be unfair, overstates culpability.  And I

13   understood Your Honor to overrule those objections.

14   THE COURT:  Okay.  Right.  I mean, the fact that the

15   witness testified that it's very common, of course, doesn't

16   mean that it's necessary in every case in order to establish

17   the offense.  And it's easy to imagine this offense occurring

18   without one or more of those features.

19   MS. SULLIVAN:  Thank you, Your Honor.

20   THE COURT:  All right.  So now let's talk about the

21   other factors regarding sentencing.

22   MR. MOHABBAT:  Shall I proceed?

23   THE COURT:  Yes.

24   MR. MOHABBAT:  Thank you, Your Honor.

25   Your Honor, a few weeks ago I was handling a

1   sentencing hearing before the Honorable Judge Johnston out in

2   Rockford.  And before we began, he made a comment about how he

3   had learned from Judge Gettleman that when we approach

4   sentencing hearings, we have to do so from a place of sadness

5   but also from a place of hope, hope for the defendant, hope for

6   the justice system.  Otherwise, the sentencing exercise is

7   merely a punitive one.

8            And I think there are reasons to be hopeful for

9   Mr. Stovall, and I'll get into that as part of the 3553(a)

10  analysis.

11           That being said, I recognize there is a tension -- a

12  direct tension between, on the one hand, Mr. Stovall maintains

13  his innocence and preserves all of those rights for further

14  proceedings, but on the other hand is requesting the least

15  sentence you could impose when it comes to imprisonment, which

16  is 10 years, followed by 10 years of supervised release, no

17  fine, a $400 special assessment.  And he's requesting no

18  restitution as well.

19           Notwithstanding this obvious tension between the two

20  positions, we do go forward without waiving any of the rights

21  for appeal or something thereafter.

22           THE COURT:  All right.

23           MR. MOHABBAT:  Judge, Mr. Stovall grew up largely

24  bouncing between residences.  I understand his father died when

25  he was approximately two years old, and he spent much of his

1  formative years, perhaps all of them, in DCFS custody trying to
2  make his way through the system, so to speak.

3         He did work lawfully for a number of years until
4  2018.  While he was working in a fast-food establishment, he
5  was shot seven times.  He spent about three months in a coma to
6  recover and has gotten on his feet.

7         To this day, he still has some bullets in his body,
8  and he uses a colostomy bag for excrement.  And this shooting
9  and the consequences of it are what rendered him unable, for
10 example, to be sexual.  Therefore, we know he did not engage in
11 sexual activity with anybody.

12        Mr. Stovall does have a candid plan to move forward
13 with his life, to go back to Popeye's, the chicken place, or
14 someplace similar and make whatever living he can to pay his
15 bills and support his daughters and future grandchildren.

16        He is currently 49 years old.  He estimates his
17 mother died when she was approximately 60 years old.  He does
18 not have a long life prognosis between the way -- the ages of
19 his parents when they died.

20        To sentence him to more than 10 years could very well
21 be a life sentence.  And that should give this Court pause that
22 a man should not have to die in prison unless it was part of a
23 capital offense.

24        Concerning specific and general deterrence -- well,
25 specifically, Mr. Stovall maintains his innocence, but in terms

1   of general societal deterrence, Congress has enunciated that a

2   10-year sentence is permissible.  That's why it is the

3   mandatory minimum.  The minimum is not 20 years; it is not 25;

4   it is not life.

5           So I think the sentence that is requested would fall

6   within the general deterrence considerations that Congress

7   created.

8           Also, Judge, I want to have it not be lost that what

9   we're here today to do is not to sentence a series of offenses.

10  It's not to sentence a crime.  We're here to sentence a human

11  being.  And I think that when we consider his background, his

12  medical condition, we come to a conclusion where 10 years is

13  the appropriate sentence.  And even if the guideline range was

14  something lower than life, I still think 10 years would be the

15  appropriate sentence.

16          We are not picking an extreme low-end number to

17  offset an extreme high-end number.  That's not what we're doing

18  here.

19          I do cite to guideline provision 5H1.4.  Pursuant to

20  Mr. Stovall's ongoing colostomy bag and lower mobility as a

21  result of that, I ask that his physical condition be taken into

22  account in sentencing him to the 10 years, downward variance

23  under 5H1.4, and also under 5H1.3 when factoring in his

24  emotional health, which is also discussed in the PSR.

25          And I think some of this emotional health comes from

1   poverty and being surrounded by drugs and his mother's

2   addiction and being a neglected child who was largely forgotten

3   as he bounced throughout the DCFS system.

4           To his credit, he never joined a gang.  He had plenty

5   of opportunity to do so.  He did not.

6           He understands that walking onto the correct side of

7   the law is what he needs to do, and that sort of positive

8   reflection demonstrates an ongoing realistic plan to not engage

9   in further crimes.  I'm not using the word recidivation,

10  because Mr. Stovall is maintaining his innocence.  It's not as

11  if he won't do it again.  His position is he didn't do it the

12  first time.

13          That being said, if he were to be -- if he were to

14  receive the 10-year sentence he asks for, he'd be in his late

15  50s when he is released.  At that point, even if Mr. Stovall

16  were to engage in some crime, let's just say something on par

17  to his criminal history before this case, he will have aged

18  out.  And statistics show once somebody is 50 or older, the

19  likelihood of committing further offenses drops drastically

20  from year to year.

21          Also, Judge, Mr. Stovall was incarcerated for maybe

22  half of the COVID pandemic.  I thought it was the entirety

23  until I thought back a few years.  2021 was not the beginning,

24  but that is when he was incarcerated.

25          He was subject to 23-1/2-hour-a-day or more

1    lock-downs.  And I think that quality or lack thereof of

2    confinement was more severe, especially in the pretrial

3    posture, than Congress anticipated when it wrote the Bail

4    Reform Act.  So I ask that the quality of time he has served to

5    date also be considered, not just the quantity that he has

6    served to date.

7            But for a couple of hearings that he missed due to

8    the colostomy bag, he has been punctual and present in court

9    and respectful.  I think that should give the Court confidence

10   that he is going to not commit some sort of supervised release

11   violation or some offense upon his release.

12           And also, Judge, I cite to a case out of the Eastern

13   District of New York, *Bannister*, for the proposition that as a

14   convicted felon, Mr. Stovall stands to lose -- lose out on

15   either thousands of opportunities or rights that somebody else

16   may have.  And despite not having those opportunities, he is

17   going to have to find a way to make a living for himself and

18   his family and be law abiding.

19           So as it is, he's going to be tasked with trying to

20   climb a mountain with one hand tied behind his back, so to

21   speak, for the rest of his life.  And a sentence that is more

22   than 10 years would be tantamount to tying both hands behind

23   his back.

24           Now, when it comes to the issue of supervised

25   release, the guideline provision is 5 years to life per count.

1  We are recommending 10 years supervised release.  By then he'll
2  be in his mid -- pardon me -- he'll be in his late 60s at that
3  point if he is still alive.  And the rules of supervised
4  release, the conditions of which Mr. Stovall is not objecting
5  to any of them while, of course, maintaining the innocence
6  provision, are designed to ensure his success on supervision,
7  not his failure.

8           And he recognizes that as long as he lives by these
9  rules, it's not only for society's benefit but also for his
10 own.  So I think 10 years prison, 10 years supervised release
11 in and of itself might be longer than the life duration, life
12 expectancy that he has, but it would achieve the aims of
13 sentencing.  And anything more than this sentence would be more
14 than what is necessary, which would defy the goals of the
15 sentencing mechanism.

16          I'm happy to answer any questions.
17          THE COURT:  I don't have any right now.
18          MR. MOHABBAT:  Thank you.
19          MS. SULLIVAN:  Your Honor, for years defendant
20 Bashiek Stovall sold children to strangers for sex.  He
21 trafficked at least six victims ranging in age from 12 to 16
22 years old.  He's refused to accept responsibility for his
23 actions.  For these reasons, the government respectfully asks
24 that the Court impose a significant term of 30 years
25 imprisonment below the guidelines range of life.

1    Defendant's crime was undoubtedly serious.  Defendant
2  used explicit photos to promote multiple girls for sex and
3  online advertisements.  He arranged dates with customers.  He
4  drove the girls to their dates, and he then pocketed the
5  proceeds.  In short, he sold children for sex with strange men
6  in strange places.

7    He taught his preteen and teenage victims, some more
8  than 30 years his junior, that they were worth nothing more
9  than a few hundred dollars for sex in a hotel room, in a car,
10  in the back of a truck.

11    He put their lives and their safety at risk and
12  undoubtedly impacted their long-term health.  Studies show that
13  victims of trafficking are at a higher risk for conditions such
14  as post-traumatic stress disorder, anxiety disorder, and
15  alcohol and drug dependency, all of which make them more
16  vulnerable to the next sex trafficker.

17    Defendant's crime is exemplary for both its breadth
18  and its duration.  Even compared to other defendants who have
19  been recently sentenced in this district of trafficking minors,
20  defendant's conduct stands out.  He trafficked more victims,
21  and he trafficked younger victims, and he trafficked them over
22  a lengthier period of time.

23    And in further aggravation compared to these other
24  defendants, the jury found beyond a reasonable doubt that
25  defendant conspired with his teenage daughter to run his sex

1    trafficking business.  This demonstrates both his inability to

2    understand that what he was doing was wrong and his disregard

3    for his own daughter's welfare.

4           A sentence of 30 years would release defendant at age

5    71, which removes him from society for his remaining productive

6    years but is not a life sentence.  It would avoid unwarranted

7    sentencing disparities, and it is appropriate in light of the

8    sentences others in this district have received.

9           As to the characteristics of the defendant, the

10   instant offense is only the latest entry in defendant's

11   significant criminal history, which includes convictions for

12   armed robbery, burglary, bail jumping, and many others.   He

13   served nearly 10 years in prison following a 2002 conviction

14   for armed robbery, and that lengthy sentence did not deter him

15   from future criminal offenses.  He even committed this offense

16   while on parole for that armed robbery.

17          Defense also cites defendant's physical condition.

18   And first, the government would like to note that defendant has

19   not put forth any medical records or anything into the record

20   regarding his condition; but second, the gunshot wound that has

21   led to defendant's current condition occurred prior to the

22   conduct at issue in this case.  Even with defendant's physical

23   limitations, he was still able to harm all of these girls.

24          And lastly, defendant has failed to accept

25   responsibility for his actions or acknowledge the seriousness

1    of the offense.  He will not age out of this conduct.  The only

2    sentence that will protect the public and particularly young

3    girls, such as Lamariyae, Janiyeh, Diamond, Janise, Charity,

4    and Angel, is one that will keep defendant out of society for

5    his remaining productive years.

6              Your Honor, 30 years is a severe sentence that should

7    be reserved for only the most severe cases.  We submit that

8    this is one of those cases.  Thank you.

9              THE COURT:  Mr. Mohabbat, do you have anything

10   further to say?

11             MR. MOHABBAT:  Yes, Your Honor.

12             Mr. Stovall's health is not in dispute.  The PSR

13   spends many paragraphs speaking to his health, both physically

14   and emotionally in light of his background.  And we have no

15   reason and I don't think the government has any reason to doubt

16   the PSR's representations.  The defense doesn't doubt it as to

17   his health.

18             And Your Honor has observed Mr. Stovall.  I think he

19   has the colostomy bag hooked up to him right now even as he

20   stands before you.

21             And concerning allegations of needing a 30-year

22   sentence to make sure he does not commit a crime, it doesn't

23   work in light of the relatively low number of years his parents

24   lived and Mr. Stovall's genetics as a result.  We think 10

25   years is appropriate to avoid what's a *de facto* likely life

1    sentence.  Thank you.

2          THE COURT:  Okay.  Mr. Stovall, is there anything you

3    would like to say before I impose a sentence?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Go ahead.

6          THE DEFENDANT:  First of all, I want to -- I -- I

7    don't like the fact that we met in this predicament.  Like, I

8    met my attorney, the prosecutors, and you during this

9    situation.

10          I also want to say -- I also want to say that I feel

11    that I'm being judged because of the case and not because of

12    the person who did the crime.  I'm getting charged -- I'm

13    getting judged by the nature of the crime, which is -- is bad,

14    is making -- it's like a monster.

15          I am not a monster.  I am not a chomo.  I am not a

16    sex offender.  I'm not a pedophile.  I'm not none of that.

17    You're only -- you're only looking at it from their point of

18    view, what somebody told them, and then they did their homework

19    and went by.  It's not one thing that points to say me

20    physically received any type of money from no females, not one

21    time.

22          I work for my money.  I worked at Popeye's.  I did a

23    good job where they put me in several other places.  I did --

24    after I did that, I went on my hands and knees and buffed a

25    person floor to show them I know how to detail floors.  When I

1  got hired for that, I went right next door to work at the --

2  the jerk place where I got shot several times.

3          And I have proof that I cannot have sex.  I have

4  proof when I got shot, and I have proof that when I was in the

5  hospital in the time that these females say that I done these

6  things.

7          I did not do these things.  I remain innocent.  I did

8  not -- I did not do it.  And I wish I could just ask you to

9  release me, but it's a -- it's a minimum of 10 years.  I don't

10 even deserve no 10 years.  I really don't.  I did not do it.

11         THE COURT:  Okay.  Are you finished?  Is there

12 anything else you would like to say?

13         THE DEFENDANT:  No.

14         THE COURT:  Okay.  Well, I have to -- well, first of

15 all, let me say that my responsibility is to impose a sentence

16 that is sufficient but not greater than necessary to comply

17 with the purposes of sentencing.  And those purposes include

18 promoting respect for the law and reflecting the seriousness of

19 the offense as well as deterring you and deterring others from

20 criminal conduct, protecting the public from further crimes;

21 and, you know, providing you with needed educational,

22 vocational training, medical care, and that sort of thing,

23 which is not really at issue in this case.

24         But first let's talk about the seriousness of the

25 offense.  I don't think there's really anything that is more

1  revolting to the public than --

2          THE DEFENDANT:  What that mean?

3          THE COURT:  Revolting?  That means it's shocking and
4  horrifying.

5          (Continuing) -- than the kind of conduct that you
6  were convicted of doing.  You say you didn't do it, but you
7  were convicted by a jury.  So I have to -- I have to accept
8  that you did this -- these crimes and that, you know, you
9  didn't show me or show the jury that anyone else did it instead
10  of you or any -- put on any defense whatsoever.

11          So, you know, whatever you say, I have to accept that
12  you are guilty as convicted.

13          Let me say that I agree with what your attorney said
14  at the beginning.  That every time I come out to sentence
15  someone, I am sad for them.  I am sad for the victims.  And I
16  also acknowledge that you are a human being and that you're not
17  all bad or all good -- none of us is -- and that you, you know,
18  have had a hard time growing up.  And, I mean, I don't even
19  pretend to relate to your background, because I didn't
20  experience anything like that; but I can acknowledge that you
21  didn't get any breaks, you know.

22          However, you know, your background is just one crime
23  after another from the age of 14.  So times that you could have
24  turned your life around, you simply didn't.  So I have a hard
25  time, you know, understanding where you're coming from in that

1  regard.

2          Now, it's true that -- I mean, your attorney spoke, I
3  think, very eloquently on your behalf that you're not in good
4  health and that you -- you know, you stayed away from gangs as
5  a young man.  And, you know, you're not a young man now.  So
6  those are factors that work in your favor.

7          So, you know, this is not an easy situation, and I
8  find it a little hard to -- it's hard to be entirely
9  sympathetic with your position, especially when, you know, you
10  aren't even accepting that this conduct was damaging to these
11  young girls.

12          So anyhow, I have to -- I have to pick a number of
13  months that you need to pay for what you have done.  And so I
14  have a general feeling that, you know, 30 years is probably too
15  long because, number one, you'll be much older then, and I just
16  don't know what benefit can be gained from that.  But I am
17  going to sentence you to 268 months, which is 22 -- comes out
18  to 22 years.

19          And then I won't impose a fine.  You are required to
20  pay $400 for your special assessment on each count.  These --
21  this sentence will run -- well, let's see.  We have to separate
22  them out into counts.

23          So it would be Counts One and Two would run
24  concurrently at 268.  And what was the other one?  There's one
25  with a lower --

1          MR. MOHABBAT:  Count Four is a five-year minimum.

2          MS. KIRIKLAKIS:  Five to 20 years, Your Honor.

3          THE COURT:  Okay.  Well, I'll just say 60 to that

4  one, but it will be concurrent.  Okay.

5          Now, Mr. Stovall, your counsel has already said that

6  you don't object to any of the conditions of supervised release

7  and I -- that were recommended by our probation officer.

8          Have you gone over those with Mr. Mohabbat?

9          MR. MOHABBAT:  We have, Your Honor.

10         THE COURT:  Okay.  And, again, there are no

11  objections?

12         MR. MOHABBAT:  Correct, Your Honor.

13         THE COURT:  Let me review what -- you recommended how

14  many years of supervised release?

15         MS. KIRIKLAKIS:  One thing, Your Honor, I wanted to

16  clarify.  Counts One and Two, you said 268 months' custody;

17  Count Four, 60 months.

18         Did I miss Count Three or is that with the --

19         THE COURT:  Okay.  It's really Counts One and Three,

20  I believe, right, that would have concurrent sentences of 268.

21         MR. MOHABBAT:  I think it's One through Three, Your

22  Honor.

23         THE COURT:  One, Two, and Three, yes.

24         MS. KIRIKLAKIS:  Okay.  Thank you.

25         THE COURT:  And then Count Four was --

1           MS. KIRIKLAKIS:  60.

2           THE COURT:  -- 60 concurrent.

3           And you're recommending seven years of supervised

4   release?

5           MS. KIRIKLAKIS:  Per count served concurrently at the

6   same time on each count.

7           THE COURT:  Okay.  So I'll put that in as well, seven

8   years of supervised release.  Okay.

9           Are there any other factors of sentencing that I have

10  overlooked?

11          MS. SULLIVAN:  Your Honor, I believe you mentioned

12  you did -- you addressed that there would be no fine, that

13  there would be a $400 special assessment.

14          I believe the issue of restitution is still

15  outstanding.

16          THE COURT:  Oh, right, yes.  So now, how did you

17  calculate restitution?

18          MS. SULLIVAN:  Your Honor, for -- the calculation is

19  slightly different for each of the six victims.

20          For all of them, we looked at their statements to FBI

21  and to the victims that testified in the grand jury.  We used

22  the information that they provided to determine approximately

23  how many weeks they worked for defendant and approximately how

24  many days per week, and then we multiplied that by an assumed

25  $400 per day to account for the ill-gotten gains that defendant

1  would have received from the work that the girls did on his

2  behalf.

3         In addition, for Charity, who had a small child at --

4  when she was working for defendant, we also multiplied the

5  number of days that we assumed she worked by $50 to account --

6  $50 per day to account for child care expenses.

7         And then for the two victims that the government

8  believes defendant introduced to trafficking and, therefore,

9  the defendant was -- is the proximate cause of any mental or

10 medical health consequences that they may suffer in the future,

11 we asked for restitution to cover future and prior mental

12 health treatment where we have that available.

13        I'd be happy to answer your -- any other further

14 questions that Your Honor has.  It was outlined in a

15 supplemental version of the offense that we submitted to

16 probation last week.

17        THE COURT:  Okay.  Well, I'll impose the restitution,

18 which is unlikely to ever be collected in light of Mr.

19 Stovall's situation, but it would be $225,600.

20        So, Mr. Stovall, I know you're shaking your head and

21 maintain your innocence, but this is my judgment of what I feel

22 is a sufficient but not greater than necessary sentence.

23        You do have the right to appeal both your conviction

24 and the sentence that I have imposed.  So that -- any notice of

25 appeal must be filed within 14 days, so be sure to discuss that

# UNITED STATES DISTRICT COURT

### Northern District of Illinois

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | **JUDGMENT IN A CRIMINAL CASE** |
| **v.** | ) | |
| | ) | |
| BASHIEK STOVALL | ) | Case Number:    1:21-CR-00136(1) |
| | ) | |
| | ) | USM Number:    31765-509 |
| | ) | |
| | ) | |
| | ) | Amir Ismael Mohabbat |
| | ) | Defendant's Attorney |

## THE DEFENDANT:

☐ pleaded guilty to count(s)

☐ pleaded nolo contendere to count(s)          which was accepted by the court.

☒ was found guilty on counts One (1), Two (2), Three (3), and Four (4) of the Superseding Indictment after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section / Nature of Offense | Offense Ended | Count |
|---|---|---|
| 18:1594C.F Conspiracy To Commit Sex Trafficking Of Children By Force, Fraud, Or Coercion | 02/25/2021 | 1s |
| 18:1591.F Sex Trafficking Of Children Or By Force, Fraud Or Coercion | 02/25/2021 | 2s |
| 18:1591.F Sex Trafficking Of Children Or By Force, Fraud Or Coercion | 02/25/2021 | 3s |
| 18:2252A.F Activities Re Material Constituting/Containing Child Porno | 02/25/2021 | 4s |

The defendant is sentenced as provided in pages 2 through 9 of this judgment.  The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☒ All remaining counts are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States Attorney for this District within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.  If ordered to pay restitution, the defendant must notify the court and United States Attorney of material changes in economic circumstances.

April 24, 2024
Date of Imposition of Judgment

Signature of Judge

Joan H. Lefkow, United States District Judge

Name and Title of Judge

April 26, 2024
Date

App. 64

# IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:
268 months as to count 1s; 268 months as to count 2s; 268 months as to count 3s; 60 months as to count 4s, all terms to run concurrent.

☒     The court makes the following recommendations to the Bureau of Prisons: Defendant to be placed at FCI Marianna in Florida.

☒     The defendant is remanded to the custody of the United States Marshal.

☐     The defendant shall surrender to the United States Marshal for this district:

     ☐     at     on

   ☐     as notified by the United States Marshal.

   ☐     The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

     ☐     before 2:00 pm on

     ☐     as notified by the United States Marshal.

     ☐     as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows: _____

_____

_____

Defendant delivered on _____ to _____ at_____, with a certified copy of this judgment.

                           _____
                           UNITED STATES MARSHAL

                    By  _____
                           DEPUTY UNITED STATES MARSHAL

**MANDATORY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3583(d)**

Upon release from imprisonment, you shall be on supervised release for a term of:
seven (7) years per count, terms to run concurrent.

        The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**

☒   (1)   you shall not commit another Federal, State, or local crime.

☒   (2)   you shall not unlawfully possess a controlled substance.

☐   (3)   you shall attend a public, private, or private nonprofit offender rehabilitation program that has been approved by the court, if an approved program is readily available within a 50-mile radius of your legal residence.  [Use for a first conviction of a domestic violence crime, as defined in **§ 3561(b)**.]

☒   (4)   you shall register and comply with all requirements of the Sex Offender Registration and Notification Act (**42 U.S.C. § 16913**).

☒   (5)   you shall cooperate in the collection of a DNA sample if the collection of such a sample is required by law.

☒   (6)   you shall refrain from any unlawful use of a controlled substance AND submit to one drug test within 15 days of release on supervised release and at least two periodic tests thereafter, up to 104 periodic tests for use of a controlled substance during each year of supervised release.  [This mandatory condition may be ameliorated or suspended by the court for any defendant if reliable sentencing information indicates a low risk of future substance abuse by the defendant.]

**DISCRETIONARY CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C § 3563(b) AND 18 U.S.C § 3583(d)**

**Discretionary Conditions** — The court orders that you abide by the following conditions during the term of supervised release because such conditions are reasonably related to the factors set forth in **§ 3553(a)(1)** and **(a)(2)(B), (C), and (D);** such conditions involve only such deprivations of liberty or property as are reasonably necessary for the purposes indicated in **§ 3553 (a)(2) (B), (C), and (D);** and such conditions are consistent with any pertinent policy statement issued by the Sentencing Commission pursuant to **28 U.S.C. 994a.**
The court imposes those conditions identified by checkmarks below:

**During the period of supervised release:**

☐   (1)   you shall provide financial support to any dependents if you are financially able to do so.

☐   (2)   you shall make restitution to a victim of the offense under **§ 3556** (but not subject to the limitation of **§ 3663(a)** or **§ 3663A(c)(1)(A)**).

☐   (3)   you shall give to the victims of the offense notice pursuant to the provisions of **§ 3555**, as follows:

☐   (4)   you shall seek, and work conscientiously at, lawful employment, or if you are not gainfully employed, you shall pursue conscientiously a course of study or vocational training that will equip you for employment.

☐   (5)   you shall refrain from engaging in the following occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in the following specified occupation, business, or profession only to a stated degree or under stated circumstances; (if checked yes, please indicate restriction(s))

☒   (6)   you shall not knowingly meet or communicate with any person whom you know to be engaged, or planning to be engaged, in criminal activity and shall not:

        ☐ visit the following type of places:

        ☒ knowingly meet or communicate with the following persons: Lamariyae, Janiyah, Diamond, Janise, Charity, and Angel.

☒   (7)   you shall refrain from ☒ any or ☐ excessive use of alcohol (defined as ☐ having a blood alcohol concentration greater than 0.08; or ☐    ), and from any use of a narcotic drug or other controlled substance, as defined in **§ 102** of the Controlled Substances Act (**21 U.S.C. § 802**), without a prescription by a licensed medical practitioner.

☒   (8)   you shall not possess a firearm, destructive device, or other dangerous weapon.

☒   (9)   ☒   you shall participate, at the direction of a probation officer, in a substance abuse treatment program, which may include urine testing up to a maximum of 104 tests per year.

        ☒ you shall participate, at the direction of a probation officer, in a mental health treatment program, and shall take any medications prescribed by the mental health treatment provider.

☐  you shall participate, at the direction of a probation officer, in medical care; (if checked yes, please specify: _____ .)

☐  (10)  (intermittent confinement): you shall remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling _____ [no more than the lesser of one year or the term of imprisonment authorized for the offense], during the first year of the term of supervised release (provided, however, that a condition set forth in **§3563(b)(10)** shall be imposed only for a violation of a condition of supervised release in accordance with **§ 3583(e)(2)** and only when facilities are available) for the following period _____

☐  (11)  (community confinement): you shall reside at, or participate in the program of a community corrections facility (including a facility maintained or under contract to the Bureau of Prisons) for all or part of the term of supervised release, for a period of _____ months.

☐  (12)  you shall work in community service for _____ hours as directed by a probation officer.

☐  (13)  you shall reside in the following place or area: _____ , or refrain from residing in a specified place or area: _____ .

☒  (14)  you shall not knowingly leave from the federal judicial district where you are being supervised, unless granted permission to leave by the court or a probation officer. The geographic area of the Northern District of Illinois currently consists of the Illinois counties of Cook, DuPage, Grundy, Kane, Kendall, Lake, LaSalle, Will, Boone, Carroll, DeKalb, Jo Daviess, Lee, McHenry, Ogle, Stephenson, Whiteside, and Winnebago.

☒  (15)  you shall report to the probation office in the federal judicial district to which you are released within 72 hours of your release from imprisonment. You shall thereafter report to a probation officer at reasonable times as directed by the court or a probation officer.

☒  (16)  ☒  you shall permit a probation officer to visit you ☒ at any reasonable time or ☐ as specified: _____ ,
　　　　☒ at home　　☒ at work　　☒ at school　　☐ at a community service location
　　　　☒ other reasonable location specified by a probation officer
　　　☒  you shall permit confiscation of any contraband observed in plain view of the probation officer.

☒  (17)  you shall notify a probation officer within 72 hours, after becoming aware of any change in residence, employer, or workplace and, absent constitutional or other legal privilege, answer inquiries by a probation officer. You shall answer truthfully any inquiries by a probation officer, subject to any constitutional or other legal privilege.

☒  (18)  you shall notify a probation officer within 72 hours if after being arrested, charged with a crime, or questioned by a law enforcement officer.

☐  (19)  (home confinement)
　　　☐  (a)(i) (home incarceration) for a period of __ months, you are restricted to your residence at all times except for medical necessities and court appearances or other activities specifically approved by the court.
　　　☐  (a)(ii) (home detention) for a period of __ months, you are restricted to your residence at all times except for employment; education; religious services; medical, substance abuse, or mental health treatment; attorney visits; court appearances; court-ordered obligations; or other activities pre-approved by the probation officer.
　　　☐  (a)(iii) (curfew) for a period of __ months, you are restricted to your residence every day.
　　　☐  from the times directed by the probation officer; or ☐ from __ to __.
　　　☐  (b) your compliance with this condition, as well as other court-imposed conditions of supervision, shall be monitored by a form of location monitoring technology selected at the discretion of the probation officer, and you shall abide by all technology requirements.
　　　☐  (c) you shall pay all or part of the cost of the location monitoring, at the daily contractual rate, if you are financially able to do so.

☐  (20)  you shall comply with the terms of any court order or order of an administrative process pursuant to the law of a State, the District of Columbia, or any other possession or territory of the United States, requiring payments by you for the support and maintenance of a child or of a child and the parent with whom the child is living.

☐  (21)  (deportation): you shall be surrendered to a duly authorized official of the Homeland Security Department for a determination on the issue of deportability by the appropriate authority in accordance with the laws under the Immigration and Nationality Act and the established implementing regulations. If ordered deported, you shall not remain in or enter the United States without obtaining, in advance, the express written consent of the United States Attorney General or the United States Secretary of the Department of Homeland Security.

☒  (22)  you shall satisfy such other special conditions as ordered below.

☒  (23)  You shall submit your person, property, house, residence, vehicle, papers [computers (as defined in 18 U.S.C. 1030(e)(1)), other electronic communications or data storage devices or media,] or office, to a search conducted by a United States Probation Officer(s). Failure to submit to a search may be grounds for revocation of release. You shall warn any other occupants that the premises may be subject to searches pursuant to this condition. An officer(s) may conduct a search pursuant to this condition only when reasonable suspicion exists that you have violated a condition of your supervision and that the areas to be searched contain evidence of this violation. Any search must be conducted at a reasonable time and in a

DEFENDANT: BASHIEK STOVALL
CASE NUMBER: 1:21-CR-00136(1)

          reasonable manner.

☐ (24) Other:

## SPECIAL CONDITIONS OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. 3563(b)(22) and 3583(d)

The court imposes those conditions identified by checkmarks below:

**During the term of supervised release:**

☐ (1) if you have not obtained a high school diploma or equivalent, you shall participate in a General Educational Development (GED) preparation course and seek to obtain a GED within the first year of supervision.

☐ (2) you shall participate in an approved job skill-training program at the direction of a probation officer within the first 60 days of placement on supervision.

☐ (3) you shall, if unemployed after the first 60 days of supervision, or if unemployed for 60 days after termination or lay-off from employment, perform at least _____ hours of community service per week at the direction of the probation office until gainfully employed. The total amount of community service required over your term of service shall not exceed _____ hours.

☐ (4) you shall not maintain employment where you have access to other individual's personal information, including, but not limited to, Social Security numbers and credit card numbers (or money) unless approved by a probation officer.

☒ (5) you shall not incur new credit charges or open additional lines of credit without the approval of a probation officer unless you are in compliance with the financial obligations imposed by this judgment.

☒ (6) you shall provide a probation officer with access to any requested financial information requested by the probation officer to monitor compliance with conditions of supervised release.

☒ (7) within 72 hours of any significant change in your economic circumstances that might affect your ability to pay restitution, fines, or special assessments, you must notify the probation officer of the change.

☒ (8) you shall file accurate income tax returns and pay all taxes, interest, and penalties as required by law.

☒ (9) you shall participate in a sex offender treatment program. The specific program and provider will be determined by a probation officer. You shall comply with all recommended treatment which may include psychological and physiological testing. You shall maintain use of all prescribed medications.

      ☒ You shall comply with the requirements of the Computer and Internet Monitoring Program as administered by the United States Probation Office. You shall consent to the installation of computer monitoring software on all identified computers to which you have access and to which the probation officer has legitimate access by right or consent. The software may restrict and/or record any and all activity on the computer, including the capture of keystrokes, application information, Internet use history, email correspondence, and chat conversations. A notice will be placed on the computer at the time of installation to warn others of the existence of the monitoring software. You shall not remove, tamper with, reverse engineer, or in any way circumvent the software.

      ☒ The cost of the monitoring shall be paid by you at the monthly contractual rate, if you are financially able, subject to satisfaction of other financial obligations imposed by this judgment.

      ☒ You shall not possess or use at any location (including your place of employment), any computer, external storage device, or any device with access to the Internet or any online computer service without the prior approval of a probation officer. This includes any Internet service provider, bulletin board system, or any other public or private network or email system

      ☒ You shall not possess any device that could be used for covert photography without the prior approval of a probation officer.

      ☒ You shall not view or possess child pornography. If the treatment provider determines that exposure to other sexually stimulating material may be detrimental to the treatment process, or that additional conditions are likely to assist the treatment process, such proposed conditions shall be promptly presented to the court, for a determination, pursuant to **18 U.S.C. § 3583(e)(2),** regarding whether to enlarge or otherwise modify the conditions of supervision to include conditions consistent with the recommendations of the treatment provider.

      ☒ You shall not, without the approval of a probation officer and treatment provider, engage in activities that will put you in unsupervised private contact with any person under the age of 18, and you shall not knowingly visit locations where persons under the age of 18 regularly congregate, including parks, schools, school bus stops, playgrounds, and childcare facilities. This condition does not apply to contact in the course of normal commercial business or unintentional incidental contact

      ☐ This condition does not apply to your family members:     [Names]



DEFENDANT:  BASHIEK STOVALL
CASE NUMBER:  1:21-CR-00136(1)

Your employment shall be restricted to the judicial district and division where you reside or are supervised, unless approval is granted by a probation officer.  Prior to accepting any form of employment, you shall seek the approval of a probation officer, in order to allow the probation officer the opportunity to assess the level of risk to the community you will pose if employed in a particular capacity.  You shall not participate in any volunteer activity that may cause you to come into direct contact with children except under circumstances approved in advance by a probation officer and treatment provider.

You shall provide the probation officer with copies of your telephone bills, all credit card statements/receipts, and any other financial information requested.

You shall comply with all state and local laws pertaining to convicted sex offenders, including such laws that impose restrictions beyond those set forth in this order.

☒ (10)   you shall pay to the Clerk of the Court any financial obligation ordered herein that remains unpaid at the commencement of the term of supervised release, at a rate of not less than 10% of the total of your gross earnings minus federal and state income tax withholdings.

☒ (11)   you shall not enter into any agreement to act as an informer or special agent of a law enforcement agency without the prior permission of the court.

☐ (12)   you shall pay to the Clerk of the Court $_____ as repayment to the United States of government funds you received during the investigation of this offense. (The Clerk of the Court shall remit the funds to _____ (list both Agency and Address.)

☒ (13)   if the probation officer determines that you pose a risk to another person (including an organization or members of the community), the probation officer may require you to tell the person about the risk, and you must comply with that instruction. Such notification could include advising the person about your record of arrests and convictions and substance use. The probation officer may contact the person and confirm that you have told the person about the risk.

☐ (14)   You shall observe one Reentry Court session, as instructed by your probation officer.

☐ (15)   Other: _____

# CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | Assessment | Restitution | Fine | AVAA Assessment* | JVTA Assessment** |
|---|---|---|---|---|---|
| **TOTALS** | $400.00 | $225,600.00 | $.00 | $.00 | $.00 |

☐  The determination of restitution is deferred until _____. An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☒  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

   If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to **18 U.S.C. § 3664(i)**, all nonfederal victims must be paid before the United States is paid.

   **See attached victim restitution sheet.**

☐  Restitution amount ordered pursuant to plea agreement $_____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant **to 18 U.S.C. § 3612(f)**.  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to **18 U.S.C. § 3612(g)**.

☒  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

   ☒    the interest requirement is waived for the restitution.

   ☐    the interest requirement for the _____ is modified as follows:

☐  The defendant's non-exempt assets, if any, are subject to immediate execution to satisfy any outstanding restitution or fine obligations.

* Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018, Pub. L. No. 115-299.
** Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
*** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☒ Lump sum payment of $226,000.00 due immediately.

    ☐ balance due not later than _____ , or

    ☐ balance due in accordance with ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ (*e.g. weekly, monthly, quarterly*) installments of $ _____ over a period of _____ (*e.g., months or years*), to commence _____ (*e.g., 30 or 60 days*) after the date of this judgment; or

**D** ☐ Payment in equal _____ (*e.g. weekly, monthly, quarterly*) installments of $ _____ over a period of _____ (*e.g., months or years*), to commence _____ (*e.g., 30 or 60 days*) after release from imprisonment to a term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ (*e.g., 30 or 60 days*) after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☐ Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

| Case Number Defendant and Co-Defendant Names (including defendant number) | Total Amount | Joint and Several Amount | Corresponding Payee, if Appropriate |
|---|---|---|---|
| | | | |

\*\*See above for Defendant and Co-Defendant Names and Case Numbers (*including defendant number*), Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.\*\*

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☐ The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) AVAA assessment, (5) fine principal, (6) fine interest, (7) community restitution, (8) JVTA assessment, (9) penalties, and (10) costs, including cost of prosecution and court costs.